CITY OF ROANOKE V. TOWN OF WESTLAKE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-01-290-CV

CITY OF ROANOKE APPELLANT

V.

TOWN OF WESTLAKE APPELLEE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I.  INTRODUCTION

The City of Roanoke (“Roanoke”) appeals from a summary judgment in favor of the Town of Westlake (“Westlake”) declaring annexation of certain tracts of land by Westlake to be valid.  Roanoke raises three issues, contending the trial court erred by declaring, in granting Westlake’s summary judgment, that Westlake’s  annexations in 1985 and 1995 were valid 
and that a Rule 11 settlement agreement purporting to disannex the tracts and apportion them between the cities was unenforceable as a contract.  Roanoke also appeals the denial of its cross-motion for summary judgment seeking a declaratory judgment that Westlake’s purported annexation of land in 1995 was void, as a matter of law.  We affirm in part, reverse and render in part, and remand in part.

II.  BACKGROUND FACTS

The Annexation Ordinances

Westlake is a general law municipality located in Tarrant and Denton Counties.  Roanoke is a general law municipality located in Denton County.  Both municipalities had fewer than 5,000 inhabitants at all relevant times, and both operate under the “aldermanic” form of government.
(footnote: 1)  Three tracts of land are in question, located between Roanoke and Westlake and claimed to be within the extraterritorial jurisdiction (“ETJ”) of both municipalities.
(footnote: 2)
 On April 8, 1985, Westlake passed Ordinance No. 138, annexing a tract consisting of 29.112 acres of land.  On the same date, by Ordinance No. 139, Westlake annexed a second tract containing 382.76 acres.
(footnote: 3)  On April 16, 1985, Roanoke passed an ordinance attempting to annex a portion of the same property previously annexed by Westlake into its own boundaries.  On September 17, 1985, Roanoke passed another ordinance purporting to annex additional portions of the property previously annexed by Westlake.  On March 6, 1995, Westlake enacted Ordinance No. 236, annexing the third tract in issue, comprising approximately 58.96 acres.  

B. Attempted Disannexation and Settlement

Scott Bradley was elected mayor of Westlake in May 1994, and was re-elected in 1996.  An election was scheduled in Westlake for May 3, 1997, for three seats on the Westlake Board of Aldermen.  On April 14, 1997, one of the existing members of the Board of Aldermen filed charges of misconduct and incompetency against Bradley.  On April 29,1997, that Alderman and three other members of the Board of Aldermen of Westlake (referred to by Westlake as the “disannexing Aldermen”) sat as a court to hear the charges against Bradley and voted to remove him from office as mayor.  On the same date, Carol Huntress, one of the disannexing Aldermen who was also mayor pro-tem of Westlake, posted a Notice of Special Meeting to be held May 2, 1997, in order to fill the vacancy in the office of mayor, to disannex the properties in issue and other properties from Westlake, and to “release” those properties to Roanoke and other neighboring cities. 

On May 1, 1997, Bradley posted a notice on the front door of the Town Hall that the special meeting was illegally called by Huntress and was cancelled. In the face of this action by Bradley, the disannexing Aldermen met on May 2, 1997, purported to install Dale White as mayor, attempted to delay installation of newly elected board members, and purported to pass ordinances and resolutions disannexing the tracts in question and releasing Westlake’s ETJ over the tracts.  

On May 3, 1997, the Westlake elections were held, with the result that new Aldermen were elected and two of the disannexing Aldermen were no longer on the board.  On May 5, 1997, Bradley canvassed the results of the election and swore in the new Aldermen.  By letter of May 5, 1997, Bradley vetoed the actions taken by the disannexing Aldermen, put Roanoke on notice that the attempts to disannex the property in issue were illegal, and demanded that Roanoke cease any attempt to take jurisdiction over the property.
(footnote: 4)  Once seated, the new Board voted unanimously to repeal the disannexation ordinances and resolutions.  

III.  PROCEDURAL HISTORY

Filing of this Suit

Roanoke filed this suit against Westlake in the 367
th
 District Court of Denton County, Texas, on February 28, 1997.  By its suit, Roanoke sought to have the 1995 Westlake Ordinance No. 236, annexing the 58.96 acre tract, declared void.
(footnote: 5)  Roanoke alleged that the tract was within the overlapping ETJs of Roanoke and Westlake, and that Westlake had failed to obtain statutorily required written consent of Roanoke for annexation of that property, rendering the attempted annexation void.  Roanoke further sought to have the land apportioned between the two cities. 

B. The Rule 11 Settlement Agreement

At the meeting on May 2, 1997, in addition to purporting to disannex the tracts in question, along with other properties from Westlake, and to release Westlake’s ETJ over those tracts to Roanoke and other neighboring cities, the disannexing Westlake Aldermen also voted to settle this suit and purported to authorize attorney R. William Wood, a new attorney of record for Westlake who was substituted for Westlake’s original attorney in the case to enter into a settlement agreement on behalf of Westlake with Roanoke.  Wood entered into a written settlement agreement with counsel for Roanoke on the same date, pursuant to which the 1995 Westlake Ordinance Nos. 236, 237, and 253, as well as the 1985 Westlake Ordinance Nos. 138 and 139, would be declared void and the portions of those lands lying north of State Highway 170 would be apportioned to Roanoke. 

On May 9, 1997, Roanoke amended its petition to include a request for declaratory relief that Westlake’s 1985 Ordinance Nos. 138 and 139, annexing the 29.112 acre and the 38.76 acre tracts, as well as the 1995 Ordinance annexing the 58.96 acre tract, were void, and sought apportionment of the properties between the two cities.  On the same date, Roanoke filed its Motion to Enter Judgment based on the Rule 11 settlement agreement.  Wood, as attorney for Westlake, likewise filed a motion to enter judgment on the Rule 11 agreement. 

The Agreed Judgment
 

On May 12, 1997, during the hearing on the motions to enter judgment, Westlake had its original counsel substituted back into the suit for Wood as its attorney of record, and withdrew its consent to the Rule 11 agreement.  The trial court rendered judgment on the Rule 11 agreement, but subsequently granted Westlake’s motion to set aside the judgment and for new trial.
(footnote: 6)
 Westlake thereafter filed an amended answer and counterclaim for injunctive and declaratory relief, asserting that the ordinances disannexing the properties and releasing Westlake’s ETJ over them to Roanoke were illegal and unauthorized, and that each of the properties was validly annexed and remained part of the incorporated limits of Westlake. 

D. The Summary Judgments

Roanoke filed a motion for summary judgment on its claim that Westlake’s annexation of the 58.96 acre tract was void and for enforcement of the Rule 11 agreement as to all three properties.  Westlake filed a motion for summary judgment, asserting that the property, some of which was purportedly annexed by Roanoke in 1985, was within the corporate limits of Westlake. Westlake’s motion further sought relief declaring Roanoke’s attempted annexation of that property into Roanoke’s ETJ to be void and that the Rule 11 agreement was unenforceable.  Pre-trial matters in this and related cases involving other surrounding municipalities, growing out of the actions of the disannexing Aldermen, were assigned to the 17
th
 District Court of Tarrant County, Texas by the Administrative Judge of the 8
th
 Administrative Judicial Region. 

In the meantime, the State of Texas on relation of Dale White, filed a 
quo warranto
 proceeding in Tarrant County, seeking a declaration that White, not Bradley, was the lawful mayor of Westlake.  In April of 1999, the Supreme Court of Texas held in that case that the removal of Bradley as mayor by the Westlake Board of Aldermen was void, and declared that Bradley remained the lawful mayor of Westlake at all times from the date of his attempted removal.
  Bradley v. State of Texas ex rel. White,
 990 S.W.2d 245, 249 (Tex. 1999).

Westlake then filed its first amended motion for partial summary judgment in this suit.  Westlake argued that its 1985 and 1995 annexations of the tracts were valid; that Roanoke’s later attempted annexations of the tracts were invalid; that the actions of the disannexing Aldermen were void because those actions lacked mayoral consent and were taken at illegally held meetings; and that Westlake’s annexation ordinances were valid.  Roanoke thereafter filed a first amended motion for partial summary judgment, asserting that it was entitled to judgment as a matter of law that the purported annexation of the 58.96 acre tract by Westlake in 1995 was within the Roanoke ETJ and was void.  Roanoke also responded to Westlake’s first amended motion, contending that issues of fact were raised as to the validity of Ordinance Nos. 138 and 139 and as to the enforceability of the Rule 11 agreement. 

The trial court granted Westlake’s first amended motion and denied Roanoke’s first amended motion.  The judgment declared that the purported disannexation and release of Westlake’s ETJ over the property described in the ordinances passed by the disannexing Aldermen were void, that Westlake Ordinance Nos. 138, 139, 236, 237, and 253 were valid, and that the tracts in question remained in Westlake’s corporate limits  Westlake non-suited its remaining claims, resulting in a final judgment from which Roanoke has appealed.

IV.  ISSUES

Roanoke complains of the summary judgment in favor of Westlake by three issues, contending that the trial court erred in ruling:  (1) that the two 1985 annexations by Westlake were valid; (2) that Westlake’s annexation of the 58.96 acre tract in 1995 was valid; and (3) that the Rule 11 agreement was unenforceable as a contract.  By its fourth issue, Roanoke complains of the denial of its own first amended motion for partial summary judgment that the 1995 annexation was void as a matter of law.
(footnote: 7)
V.  STANDARD OF REVIEW

We review a summary judgment de novo.  
Natividad v. Alexsis
, 875 S.W.2d 695, 699 (Tex. 1994).  
A motion for summary judgment must expressly present the grounds upon which it is made, and it must stand or fall upon those grounds.
  
Tex. R. Civ. P
. 
166a(c);
 
Sci. Spectrum, Inc. v. Martinez
, 941 S.W.2d 910, 911 (Tex. 1997); 
McConnell v. Southside Indep. Sch. Dist
., 858 S.W.2d 337, 341 (Tex. 1983).  Issues not expressly presented by the written motion or response cannot be considered by the appellate court as grounds for reversal.  
Tex. R. Civ. P. 
166a(c); 
Johnson v. Brewer & Pritchard
, 
P.C.
, 73 S.W.3d 193, 204 (Tex. 2002); 
McConnell
, 858 S.W.2d at 229.

The issue on appeal is whether the movant has established that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law.
  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
 988 S.W.2d 746, 748 (Tex. 1999);
 City of Houston v. Clear Creek Basin Auth.
, 689 S.W.2d 746, 748 (Tex. 1979).  The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against the movant.  
Rhone-Poulenc, Inc. v. Steel
, 997 S.W.2d 217, 223 (Tex. 1999); 
Friendswood Dev. Co. v. McDade + Co.
, 926 S.W.2d 280, 282 (Tex. 1996).
(footnote: 8)
 When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
Dow Chem. Corp. v. Bright
, 89 S.W.3d 602, 605 (Tex. 2002).  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.
 VI.  APPLICATION OF LAW TO FACTS

Enforceability of The Rule 11 Agreement

The Summary Judgment Evidence

We first address Roanoke’s third issue, complaining that the trial court erred in ruling that the May 1997 Rule 11 agreement between Roanoke and Westlake was not enforceable as a contract between the parties.  If Roanoke’s position on this issue is correct, the Rule 11 agreement is dispositive of the other issues.

Westlake’s first amended motion for summary judgment asserted that the Rule 11 agreement was unenforceable because its then attorney of record, R. William Wood, was not authorized to enter into the agreement on behalf of Westlake.  In support of this ground, Westlake filed affidavits of Mayor Scott Bradley and the Town Secretary, together with  certified copies of all relevant notices, ordinances, and resolutions referenced in the affidavits.

The summary judgment evidence details the actions of the disannexing Aldermen in April and May of 1997.  Bradley’s affidavit describes the filing of the complaint attempting to remove Bradley from office, the trial resulting in Bradley’s purported removal, which was subsequently declared void 
ab initio
 by the supreme court, the calling of the special meeting for May 2, 1997 by Huntress, Bradley’s posting of notice of cancellation of that meeting as illegally called, and the holding of that meeting notwithstanding its cancellation, at which those Aldermen purportedly authorized Wood, as attorney of record for Westlake, to settle this suit. 

The Rule 11 agreement is in the form of a letter addressed to Wood from Roanoke’s attorney, Michael McEntire, dated May 2, 1997, offering to settle this suit on the following terms:

Westlake Ordinances 138, 139, 236, 237, and 253 shall be declared void.

The parcel of land described in Westlake Ordinance 138 will be judicially apportioned to Roanoke and be within the sole extra-territorial jurisdiction of Roanoke.

The portion of the parcel of land described in Westlake Ordinance 139 which lies north of the right-of-way of State Highway 170 will be judicially apportioned to Roanoke and be within the sole extra-territorial jurisdiction of Roanoke.

Roanoke relinquishes all claims to the portion of the parcel of  land described in Westlake Ordinance No. 139 which lies south of the north right-of-way line of State Highway 170.

The portion of the parcel of land described in Westlake Ordinance 236 which lies north or west of the right-of-way line of State Highway170 will be judicially apportioned to Roanoke and be within the sole extra-territorial jurisdiction of Roanoke.

Roanoke relinquishes all claims to the portion of the parcel of  land described in Westlake Ordinance No. 236 which lies south or east of the right-of-way line of State Highway 170.

The property description and exhibits attached hereto will be part of this agreement.

Roanoke will waive any claims for attorneys fees and costs against Westlake.

If this offer is acceptable to your client, please sign the same and either file it with the Court or return it to me and I will file it.  

This letter and its attachments will be binding and enforceable pursuant to Tex. R. Civ. P. Rule 11, and the only remaining act of the parties will be to ministerially prepare a judgment drafted in accordance with its terms and present the same to the District Court for signature. 

The letter was signed by McEntire, and contained a signature line on which Wood signed as “Accepted” as attorney for Westlake.  Roanoke has never contended that Wood had actual authority to settle this suit on behalf of Westlake.  Roanoke makes no contention that the May 2, 1997 meeting called by Huntress was a legally called meeting or that the disannexing Aldermen were actually empowered to act for Westlake in authorizing Wood to settle this suit.  Roanoke urges only that Wood possessed “apparent” authority to enter into the settlement and Rule 11 agreement.

Roanoke’s summary judgment evidence consisted of the affidavit of its attorney attached to Roanoke’s response in the trial court.  McEntire averred that he attended the May 2, 1997 meeting of the Aldermen called by Carol Huntress, who he knew to be mayor pro-tem of Westlake, and that during the meeting, the Board voted to settle the lawsuit and further voted to include Ordinances 138 and 139 in the overall settlement, even though those ordinances were not at issue in the suit at that time. 

According to McEntire’s affidavit, he proposed the settlement agreement to Wood on May 2, 1997.  He stated he presumed Wood was authorized to settle this case because Wood, as attorney of record for Westlake in this suit, was presumed to have authority to settle.  Additionally, based on the actions of the members of the disannexing Aldermen at the May 2, 1997 meeting, McEntire stated that he believed Wood was clothed with apparent authority and believed that Roanoke acted reasonably in believing Wood had authority to accept the settlement offer on behalf of Westlake. 

2. Rule 11 Requirements

As this court has noted, settlement agreements are governed by contract law.  
Alcantar v. Okla. Nat’l Bank
, 47 S.W.3d 815, 819 (Tex. App.—Fort Worth 2001, no pet.); 
Cothron Aviation, Inc. v. Avco Corp
., 843 S.W.2d 260, 263 (Tex. App.—Fort Worth 1992, writ denied).  Rule 11 of the Texas Rules of Civil Procedure provides, however, that “[u]nless otherwise provided in these rules, no agreement between the attorneys or parties touching any suit pending will be enforced unless it is in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.”  
Tex. R. Civ. P. 
11.

The supreme court has superimposed the requirements of Rule 11 on all settlement agreements in pending suits.  
Padilla v. LaFrance
, 907 S.W.2d 454, 460 (Tex. 1995); 
Kennedy v. Hyde
, 682 S.W.2d 525, 528 (Tex. 1984) (holding Rule 11 sets forth the “minimum requirement for enforcement of all [settlement] agreements [in] pending suits, including but not limited to, agreed judgments”).  Roanoke does not contest the trial court’s previous order vacating the agreed judgment in this case based on lack of consent by Westlake to the Rule 11 agreement.  What Roanoke contests is the subsequent refusal of the court to enforce the Rule 11 agreement as a contract.

Although a court may not render an agreed judgment absent consent at the time it is rendered, the court may nevertheless enforce a settlement agreement that complies with Rule 11 as a contract, even after one party has withdrawn its consent.  
Padilla, 
907 S.W.2d at 460
 
(holding trial court erred in refusing to enforce settlement agreement that complied with Rule 11 although one party had withdrawn consent); 
see also Burnaman v. Heaton
, 150 Tex. 333, 338, 240 S.W.2d 288, 291 (1951) (reversing consent judgment where plaintiff contended her attorney lacked authority to agree to settlement before judgment rendered, but without prejudice to defendants’ right to plead and prove agreement as contract); 
Quintero v. Jim Walter Homes
,
 Inc
., 654 S.W.2d 442, 444 (Tex. 1983) (reversing consent judgment without prejudice to rights of party to plead and prove an enforceable settlement agreement).

The agreement in question was in writing, signed by McEntire, as attorney for Roanoke, and by Wood, as attorney of record for Westlake.  
See W. Beach Marina, Ltd. v. Erdeljac
, 94 S.W.3d 248, 255 (Tex. App.—Austin 2002, no pet.) (holding settlement agreement satisfied Rule 11 where counsel for both parties signed agreement and it was filed with court); 
Ebner v. First State Bank of Smithville
, 27 S.W.3d 287, 297 (Tex. App.—Austin 2000, pet. denied) (noting Rule 11 agreement may be signed by party or party’s attorney); 
but see Alcantar
, 47 S.W.3d at 821-22 (holding terms of oral settlement agreement announced to judge by telephone and later incorporated in judgment not in compliance with Rule 11).

The letter agreement was signed and filed by both counsel with the court as attachments to both parties’ motions to enter judgment (as the basis for the agreed judgment signed on May 12, 1997, which was subsequently vacated by the trial court).  The agreement thus satisfied both the writing and the filing requirements for enforcement of a Rule 11 agreement.  
See Padilla
, 907 S.W.2d at 461.

Apparent Authority of Municipality’s Attorney

There are two types of authority:  actual and apparent.  
W. Beach Marina, Ltd.
, 94 S.W.3d at 256; 
Ebner
, 27 S.W.3d at 300.  Actual authority is authority that the principal intentionally conferred on the agent or allowed the agent to believe was conferred.  
Ebner, 
27 S.W.3d at 300; 
Currey v. Lone Star Steel Co.
, 676 S.W.2d 205, 209-10 (Tex. App.—Fort Worth 1984, no writ).  Apparent authority exists when the principal leads a reasonable third party to believe that the agent has the authority that he purports to exercise.  
Ebner,
 27 S.W.3d at 300 (citing 
Biggs v. United States Fire Ins. Co.,
 611 S.W.2d 624, 629 (Tex. 1981)).  To establish apparent authority, the principal must make some manifestation to a third party that it is conferring authority or, by its actions, shows such a lack of ordinary care as to clothe the agent with indicia of authority.  
Id.
 at 300-01 (citing 
NationsBank, N.A. v. Dilling
, 922 S.W.2d 950, 952-53 (Tex. 1996)); 
see also Ames v. Great S. Bank
, 672 S.W.2d 447, 450 (Tex. 1984).

Neither party has cited, nor have we found, a Texas case specifically addressing whether a municipality may be bound to a settlement agreement by an attorney representing it in pending litigation, on the theory of apparent authority.  Westlake cites cases from other jurisdictions holding agreements by attorneys on behalf of governmental entities unenforceable absent actual authority granted by statute or resolution of the governing board.
  See Presnell v. Bd. of County Road Comm’rs of County of Wayne
, 306 N.W.2d 516, 520 (Mich. Ct. App. 1981) (holding attorney for board lacked authority absent statute or express resolution of board to settle claim for damages); 
Dillon v. City of Davenport, 
366 N.W.2d 918, 923 (Iowa 1985) (holding actual authority by attorney for city to settle claim for specific sum conferred by city council but additional benefits were not).

Roanoke argues that those decisions do not support Westlake’s position that apparent authority cannot be conferred on an attorney representing a municipality because neither case specifically addressed the issue of apparent authority.  Those cases are instructive, however, particularly in light of Texas cases holding that the doctrine of apparent authority does not apply to municipalities, as discussed below.

Apparent Authority Inapplicable to City

Westlake contends, and we agree, that a party may not use the theory of apparent authority to bind a municipality, absent estoppel.  
Wilke v. City of Ballinger
, 31 S.W.2d 1102, 1103 (Tex. Civ. App.—Austin 1930, no writ); 
Orange County v. Tex. N.O.R. Co.
, 35 Tex. Civ. App. 361, 362, 80 S.W. 670, 670 (1904, writ ref’d).  
Wilke
 involved an action for specific performance of a city’s written contract to purchase Wilke’s land.  31 S.W.2d at 1102.  Appraisers appointed by the parties failed to file a written unanimous report, as required by the contract, fixing the price to be paid for the land.  
Id
.  Wilke contended the mayor accepted a verbal report on behalf of the city and thereby waived the requirement of a written report.  
Id
.  The court held that the mayor had no actual authority to waive the requirement because waiver of provisions of a contract was not of an executive nature but of a contractual nature, and “only officials authorized by law could bind the city in that regard.”  
Id
. at 1102-03.

The court in 
Wilke
 further stated, “It is the settled law of this state that an officer of a municipal corporation cannot bind his principal except upon actual authority, absent any question of estoppel.”  
Id
. at 1103; 
see also Cleontes v. City of Laredo,
 777 S.W.2d 187, 189 (Tex. App.—San Antonio 1989, writ denied) (holding evidence of airport director’s apparent authority to abate rent due on leased property irrelevant where ordinance necessary under city charter to authorize abatement was never passed); 
Thermo Prods. Co. v. Chilton Indep. Sch. Dist
., 647 S.W.2d 726, 732 (Tex. App.—Waco 1983, writ ref’d n.r.e.) (noting rule that public officers cannot bind governing body beyond authority conferred on them, absent estoppel); 
City of Houston v. Lakewood Estates
, 
Inc
., 429 S.W.2d 938, 941 (Tex. Civ. App.—Houston [1
st
 Dist.] 1968, no writ);
 Hallman v. City of Pampa
, 147 S.W.2d 543, 546 (Tex. Civ. App.—Amarillo 1941, writ ref’d) (holding express authorization required for officer or employee of city to bind city in matters committed exclusively to governing body).

We agree with the Texas cases holding that the doctrine of apparent authority does not apply to municipalities, and we hold that the doctrine likewise does not apply to allow apparent authority of an attorney representing a municipality in pending litigation to bind that municipality to a settlement.

Lack of Apparent Authority Established

Roanoke contends that the Texas cases holding that actual authority is required for a public officer to bind a municipality to a settlement do not apply to this case involving an attorney of record.  In general, a party may clothe his attorney with actual or apparent authority to reach and sign a settlement agreement that is binding on the client.  
W. Beach Marina, Ltd., 
94 S.W.3d at 256;
 Ebner
, 27 S.W.2d at 300; 
Walden v. Sanger
, 250 S.W.2d 312, 316 (Tex Civ. App.—Austin 1952, no writ)
.  Even if Roanoke were correct that the doctrine of apparent authority extends to attorneys representing municipalities, however, we hold that the summary judgment evidence conclusively negated Roanoke’s claim that Westlake somehow conferred apparent authority on Wood, through the actions of the disannexing Aldermen, to enter into the Rule 11 settlement agreement.

Roanoke contends that Westlake is relying solely upon the 
Bradley
 decision for its position that Wood had no apparent authority to settle, and that this fact is not material to the reasonable belief of Roanoke as to Wood’s authority in May of 1997.  
See
 
Bradley,
 990 S.W.2d at 249.  Westlake proved through its summary judgment evidence, however, that the May 2, 1997 meeting held by the disannexing Aldermen, purporting to authorize Wood to enter into the settlement, was not a regularly scheduled meeting, but was a “special meeting,” as described in the notice posted by Huntress on April 29, 1997, the same date that those Aldermen voted to remove Bradley as mayor.  Bradley publicly posted a notice on May 1, 1997, cancelling the meeting for May 2 as illegally called in violation of section 22.038 of the local government code.  It is undisputed that Mayor Bradley did not call the meeting and did not consent to the meeting, nor was he requested by any Aldermen to call the meeting.
(footnote: 9)  Additionally, Bradley put Roanoke and other surrounding municipalities having related interests on notice by letter dated May 5, 1997 that the purported actions taken at the May 2, 1997 meeting by the disannexing Aldermen were illegal and void. 

The evidence is undisputed that Roanoke had notice when Wood signed the Rule 11 agreement, at some unknown time on or after May 2, 1997:  (a) that the purported removal of Bradley as mayor was being challenged; (b) that Bradley was continuing to act as mayor; (c) that Bradley did not consent to or call the meeting, nor was he present; and (d) that Bradley had cancelled the meeting.  Because McEntire attended the meeting, it is significant that McEntire’s affidavit does not address the notice that Bradley had posted on the front door of the Town Hall the day before, declaring the meeting illegal.  Nor does McEntire’s affidavit address the written notice given to Roanoke by Bradley on May 5, that the actions of the Aldermen at the May 2 meeting were illegal.

Based on the totality of the uncontroverted summary judgment evidence, we conclude that Westlake conclusively disproved any actions based upon which Roanoke could have formed a reasonable belief that Wood possessed authority to enter into the Rule 11 settlement agreement on behalf of Westlake.

Presumption of Authority

Roanoke also argues that the apparent authority of Wood to enter into the settlement agreement existed by virtue of the presumption of authority based upon his status as attorney of record for Westlake at the time he signed the agreement.  We agree that an attorney retained for litigation is presumed to possess authority to enter into a settlement on behalf of a client.  
Williams v. Nolan
, 58 Tex. 708, 713-14 (1883);
 Walden
, 250 S.W.2d at 316;
 
Dunlap v. Villareal
, 91 S.W.2d 1124, 1125 (Tex. Civ. App.—San Antonio 1936, no writ).  This is a presumption of 
actual
 authority, however, and may be rebutted by affirmative proof that the client did not authorize his attorney to enter into the settlement. 
Walden,
 250 S.W.2d at 316; 
Johnson v. Rancho Guadalupe, Inc.,
 789 S.W.2d 596, 598 (Tex. App.—Texarkana 1990, writ denied) (op. on reh’g) (noting that there is no implied authority for an attorney to release the very right or interest he is employed to protect); 
Fail v. Lee
, 535 S.W.2d 203, 207-08 (Tex. Civ. App.—Fort Worth 1976, no writ) (affirming summary judgment enforcing settlement agreement absent proof that defendant did not authorize his attorney to settle); 
Infante v. Bridgestone/Firestone, Inc., 
6 F. Supp. 2d 608, 610 (E.D. Tex. 1998) (citing 
Amin v. Merit Sys. Prot. Bd.
, 951 F.2d 1247, 1254 (Fed. Cir. 1991), and holding client failed to carry burden to produce clear evidence that she had withdrawn authority before attorneys announced settlement in open court).

Roanoke cites no authority utilizing the presumption of authority of an attorney of record to support a claim of apparent authority.  Moreover, based on the evidence discussed above, Westlake rebutted the presumption by clear and uncontradicted summary judgment evidence proving that its attorney of record was never authorized by valid action of the governing body of Westlake to settle, nor was he clothed with apparent authority.  We overrule Roanoke’s third issue.

Validity of the 1985 Annexations

By its second issue, Roanoke asserts that the trial court erred in ruling that Westlake Ordinance Nos. 138 and 139, annexing tracts of land in 1985, are valid.  Roanoke argues that its summary judgment evidence raised fact issues as to the validity of those ordinances 
by establishing that the tracts in question were located within Roanoke’s ETJ at the time the ordinances were passed and that the annexations were without Roanoke’s written consent. 

Until 1963, conflicting claims of municipalities over annexation of land were governed by scattered legislation, together with the judicially established “first in time” rule, by which the entity taking the first step to create or expand its boundaries obtained exclusive jurisdiction over an area sought to be annexed.
(footnote: 10) 
 By the 1963 Municipal Annexation Act (“Act”), the legislature established a comprehensive statutory scheme, based upon the concept of ETJs, to determine whether a municipality may exercise jurisdiction over a particular area.
(footnote: 11)  
The Act was intended to resolve increasingly frequent conflicting claims between cities, as Texas continued to grow, by structuring the expansion of cities and protecting them from intrusion by their neighbors.
  City of Waco v. City of McGregor
, 523 S.W.2d 649, 653 (Tex. 1975).
  The Act allows a municipality a designated amount of adjacent and contiguous unincorporated area as its ETJ, with the surrounding area comprising the ETJ to be determined by the population of a municipality, ranging from one-half mile for municipalities with fewer than 5,000 inhabitants to five miles for those with 100,000 or more inhabitants.  
Tex. Loc. Gov’t Code Ann
. § 42.021.

Since the Act created an entirely new scheme by the designation of ETJs, the legislature provided a procedure for resolving issues regarding overlapping ETJs existing at the time of the statute’s enactment.  Cities could apportion overlapping ETJs by written agreement approved by ordinance or resolution or could request apportionment by an action in district court.  
Id
. § 42.901.
(footnote: 12)  The legislature also established procedures to govern the reduction or expansion of ETJs.  With some exceptions, a city may annex only territory that is within its ETJ, unless it owns the area sought to be annexed.  
Id
. § 43.051.  Additionally, a city’s ETJ cannot be reduced without its written consent.  
Id.
 § 42.023 (Vernon 1999) (“The [ETJ] of a municipality may not be reduced unless the governing body of the municipality gives its written consent by ordinance or resolution . . . .”).

Both Westlake and Roanoke furnished summary judgment evidence that each of the tracts in question have been located within their respective ETJs since the date of the original enactment of the Act in 1963, and neither party disputes the other’s claim.  It is also undisputed that the lands in question have never been apportioned by agreement or by any action brought in district court.  We are therefore faced with conflicting claims of overlapping ETJs.  If Westlake’s ordinances annexing the tracts in question into its corporate boundaries are upheld as valid, the result will be to reduce the ETJ of Roanoke.  Roanoke thus relies upon the statutory requirement contained in local government code section 42.023, requiring its written consent to reduce its ETJ, the effect of which is that Westlake may not annex land that is also within Roanoke’s ETJ without Roanoke’s written consent.  
Id.
;
 City of Murphy v. City of Parker
, 932 S.W.2d 479, 481 (Tex. 1996); 
City of Nassau Bay v. City of Webster, 
600 S.W.2d 905, 908 (Tex. Civ. App.—Houston [1
st
 Dist.]), 
writ ref’d n.r.e. per curiam, 
608 S.W.2d 618 (Tex. 1980); 
City of Duncanville v. City of Woodland Hills
, 484 S.W.2d 111, 113 (Tex. Civ. App.—Waco), 
writ ref’d n.r.e. per curiam
, 489 S.W.2d 557 (Tex. 1972).
(footnote: 13)
 Westlake, does not contend that Roanoke ever consented to the annexations.  Rather, Westlake’s position in its first amended motion for summary judgment and in this court is that Roanoke is barred from challenging the validity of the annexations because of a conclusive statutory presumption, as follows:

§ 43.901. Circumstances in which Consent to Boundaries or Annexation is Presumed

A municipal ordinance defining boundaries of or annexing area to a municipality is conclusively presumed to have been adopted with the consent of all appropriate persons if:

(1) two years have expired after the date of the adoption of the ordinance, and

(2) an action to annul or review the adoption of the ordinance has not been initiated in that two-year period.

Tex. Loc. Gov’t Code Ann.
 § 43.901 (Vernon 1999).

In 
Murphy
, the Supreme Court of Texas held that the consent required of “all appropriate persons” by this statute applies to municipalities as well as individuals and residents in the annexed area, and interpreted this section to be a statute of limitations resulting in a complete bar, as a matter of law, to any challenge after two years.  932 S.W.2d at 481.

Roanoke argues that section 43.901 was not adopted until 1987 and seeks to distinguish 
Murphy
 on the basis that all of the acts of the cities in that case took place after the statute was enacted.  Roanoke contends that, because the statute contains no language making it retrospective in operation, it does not apply to the 1985 annexations by Westlake.  
See
 
Tex. Gov’t Code Ann. 
§ 311.022 (Vernon 2000) (“A statute is presumed to be prospective in its operation unless expressly made retrospective.”).  Although there was no comparable provision to section 43.901 in the original Act, Westlake responds that the predecessor statute to section 43.901 was a statute passed in 1949, which likewise contained a conclusive presumption, providing as follows:

Art.  974c-4.  Annexation or definition of boundaries; validation

Section 1.  All city charters, city charter amendments, ordinances and proceedings of the governing bodies of all incorporated cities, including home rule cities, defining the boundaries of such incorporated cities or annexing thereto territory adjoining any such city with the consent of a majority of the inhabitants of such annexed territory, are hereby ratified and confirmed.

Sec. 2.  
After the expiration of two (2) years from the date of any ordinance defining boundaries of or annexing territory to any incorporated city, consent to the annexation and inclusion of such territory in such city shall be conclusively presumed if no action has been commenced to annul or review such act.

Sec. 2A.  The provisions of this Act shall not apply to any territory of any city where the annexation of such territory is the subject of any pending litigation at the time of passage of this Act.
(footnote: 14)
 We agree with Westlake that, under former article 974c-4, containing almost identical language to section 43.901, as construed by the supreme court in 
Murphy
, Roanoke’s consent to the 1985 Ordinance Nos. 138 and 139 is conclusively presumed.  We also note that curative and validating statutes may

be considered retrospective in effect.  
City of Deer Park v. State ex rel. Shell Oil Co.
, 154 Tex. 174, 182, 275 S.W.2d 77, 82 (1954) (op. on reh’g) (noting that municipalities have no contract right in boundaries and legislature has same authority to enact legislation decreasing boundaries as it does to validate ordinances increasing boundaries).  Accordingly, we hold that the trial court correctly granted summary judgment in favor of Westlake regarding the 1985 annexations.  We overrule Roanoke’s second issue.

C. Validity of the 1995 Annexation Ordinance

By its first issue, Roanoke contends that the trial court erred in ruling that Westlake’s annexation of a 58.96 acre tract by Ordinance Nos. 236, 237, and 253 were valid because of procedural inadequacies in Westlake’s first amended motion for summary judgment.  Roanoke’s fourth issue complains that the trial court erred in granting Westlake’s first amended motion and in failing to grant its first amended motion for summary judgment asserting that Ordinance Nos. 236, 237, and 253 are void as a matter of law.  Both parties agree that the issue of the validity of Ordinance Nos. 236, 237, and 253 is one of law.

1. Adequacy of Westlake’s First Amended Motion

Roanoke first complains that the trial court erred in declaring that Westlake Ordinance No. 236 is valid because Westlake failed to present the validity of that ordinance as an issue in its first amended motion for summary judgment.
(footnote: 15)  We disagree.  Westlake asserted in that motion that it properly included the “Property” within its corporate limits, described as certain property lying within the Westlake corporate limits, “some of which” was annexed in 1985, and “some of which was allegedly disannexed and released to Roanoke” on May 2, 1997.  Westlake further alleged that “Roanoke has no claim to the Property” at issue and that such property cannot be annexed by Roanoke.  Among the enumerated “facts” listed by Westlake as established by its summary judgment evidence as a matter of law are the following:  “(7) On March 6, 1995, Westlake passed Ordinance 236 re-establishing its corporate boundaries . . . [and] (8) On March 6, 1995, Westlake passed Ordinance 237 adopting a map of its corporate boundaries . . . .”  In the portion of Westlake’s motion titled “Argument and Authorities,” Westlake also stated that its summary judgment evidence showed that Roanoke’s attack on Westlake’s Ordinance Nos. 138, 139, 236, and 237 was without merit.  Westlake’s motion further contained a specific section entitled:  “Roanoke’s Attack on Westlake Ordinance Nos. 138, 139, 236 and 237 Fail as a Matter of Law,” expressly urging that “Westlake asserts that those ordinances are valid and include the Property within the town’s borders.”  

Rule 166a(c) states that “the motion for summary judgment shall state the specific grounds therefor.”  
Tex. R. Civ. P. 166
a(c).  While grounds must be stated expressly in a motion, they may be stated without detail or argument.  
McConnell,
 858 S.W.2d at 339.  A movant is not required to specifically describe how evidence in support of the motion justifies a summary judgment; merely identifying a theory of liability or defense will suffice.  
See, e.g., Garcia v. S. Tex. Sec. & Alarm Co.
, 911 S.W.2d 483, 485 (Tex. App.—Corpus Christi 1995, no writ); 
Conquistador Petro., Inc., v. Chatham
, 899 S.W.2d 439, 441-42 (Tex. App.—Eastland 1995, writ denied); 
Hennessey v. Vanguard Ins. Co
., 895 S.W.2d 794, 801 (Tex. App.—Amarillo 1995, writ denied).  “So long as the ground appears in the motion or response, it need not be supported by factual detail or legal argument.”  
Timothy Patton, Summary Judgments in Texas,
 § 3.05 (3d ed. 2002); 
see Conquistador Petro
., 899 S.W.2d at 442.

Grounds are sufficiently specific if they give “fair notice” to the nonmovant.  
Westchester Fire Ins. Co. v. Alvarez
, 576 S.W.2d 771, 773 (Tex. 1978), 
overruled on other grounds by Clear Creek
, 589 S.W.2d at 673; 
Dear v. City of Irving
, 902 S.W.2d 731, 734 (Tex. App.—Austin 1995, writ denied); 
Patton, 
supra
, § 3.05 (3d ed. 2002).  Where grounds are ambiguous or unclear, the nonmovant must specially except to the form of the motion and give the movant an opportunity to amend before the nonmovant can raise the complaint on appeal.  
McConnell,
 858 S.W.2d at 341; 
Alder v. Laurel
, 82 S.W.3d 372, 376 (Tex. App.—Austin 2002, no pet.).  Westlake’s motion might, at most, be construed as unclear or as lacking specificity in stating that it validly annexed the property, “some of which” was annexed in 1985.  Roanoke failed, however, to specially except to that generalized allegation.  Moreover, subsequent specific statements in Westlake’s motion made clear that Westlake was asserting that Ordinance No. 236, annexing the 58.96 acre tract, was valid.

Additionally, Roanoke’s own response recognized that Westlake was presenting the issue of the validity of Ordinance No. 236.  Roanoke’s response stated, “Westlake has asserted it is entitled to judgment on the issues in its motion and has offered as proof that Westlake Ordinance Nos. 236 and 237 are valid (and not void as Roanoke has pleaded), the very statutes whose validity is a primary issue . . . .”  Roanoke’s response further acknowledged:  “Roanoke does not dispute that on or about March 6, 1995, Westlake passed Ordinance No. 236.  Roanoke is disputing the validity of Ordinance No. 236 . . . .”  On page 16 of Roanoke’s response, a subheading states, “5.  Westlake Ordinances Number 138, 139, 236 and 237 are void.”  Under that subheading, Roanoke “adopts its arguments in Plaintiff’s First Amended Motion for Summary Judgment for its response to Westlake’s argument concerning Ordinance number 236 . . . .” and notes that its complaint about Ordinance No. 237 pertains only to the inclusion of the 58.96 acre tract in the map of Westlake’s boundaries.  Roanoke’s own motion and response are accompanied by summary judgment evidence addressing both Ordinance Nos. 236 and 237.

Because Roanoke provided responsive argument and evidence regarding the very issues that it now claims Westlake’s motion failed to raise, and because Roanoke did not specially except to the specificity of Westlake’s motion, we hold that Westlake’s first amended motion sufficiently raised the issue of the validity of Ordinance Nos. 236 and 237.  
See Torres v. City of Waco
, 51 S.W.3d 814, 823 (Tex. App.—Waco 2001, no pet.) (overruling complaint regarding lack of specificity where nonmovant provided summary judgment evidence responsive to the element he claimed the movant failed to raise, thereby showing that he understood that element was in issue).   Accordingly, we overrule Roanoke’s first issue.

Validity of the 1995 Annexation

By its fourth issue, Roanoke contends that the trial court erred in granting Westlake’s first amended motion and in denying its partial motion for summary judgment by declaring that Westlake Ordinance No. 236, adopted March 6, 1995, annexing the 58.96 acre tract was valid because Westlake failed to obtain Roanoke’s written consent to the annexation.  
See
 
Tex. Loc. Gov’t Code Ann.
 § 42.023.  Section 42.023 states,

The extraterritorial jurisdiction of a municipality may not be reduced unless the governing body of the municipality gives its written consent by ordinance or resolution, except in cases of judicial apportionment of overlapping extraterritorial jurisdictions under Section 42.901.

Id
.  Because Roanoke filed suit to challenge that annexation in February 1997, within two years of the annexation, Roanoke argues that the conclusive presumption of consent provided by local government code section 43.901 does not apply.  
See id
. § 43.901.  

Westlake does not argue that Roanoke gave consent to this annexation but contends that the property was annexed under a section of the local government code that did not require Roanoke’s consent.  Specifically, the statute pursuant to which this tract was expressly annexed is local government code section 43.071, which provides as follows:

43.071. Authority to Annex Water or Sewer District

(a) In this section, “water or sewer district” means a district or authority created under Article III, Section 52, Subsections (b)(1) and (2), or under Article XVI, Section 59, of the Texas Constitution that provides or proposes to provide, as its principal function, water services or sewer services or both to household users.  The term does not include a district or authority the primary function of which is the wholesale distribution of water.

(b) A municipality may not annex area in a water or sewer district unless it annexes the entire part of the district that is outside the municipality’s boundaries.  This restriction does not apply to the annexation of area in a water or sewer district if the district is wholly or partly in the extraterritorial jurisdiction of more than one municipality.

(c) An annexation subject to Subsection (b) is exempt from the provisions of this chapter that limit annexation authority to a municipality’s extraterritorial jurisdiction if:

(1) immediately before the annexation, at least one-half of the area of the water or sewer district is in the municipality or its extraterritorial jurisdiction;  and

(2) the municipality does not annex in the annexation proceeding any area outside its extraterritorial jurisdiction except the part of the district that is outside its extraterritorial jurisdiction.

Tex. Loc. Gov’t Code Ann.
 § 43.071 (Vernon 1999).

Whether the legislature eliminated the consent requirement for the reduction of Roanoke’s ETJ, caused by Westlake’s annexation of the 58.96 acre tract under section 43.071, rests upon statutory construction of the local government code.  
See Johnson v. City of Fort Worth
, 774 S.W.2d 653, 656 (Tex. 1989).  Our primary objective in construing a statute is to determine and give effect to the legislature’s intent.  
Phillips v. Beaber
, 995 S.W.2d 655, 658 (Tex. 1999).
  In determining the legislature’s intent, we first look to the statute’s plain and common meaning and presume that the legislature intended the plain meaning of its words.  
Fleming Foods v. Rylander
, 6 S.W.3d 278, 282, 284 (Tex. 1999).  Further, in construing a statute, we may consider among other matters the:  (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute;  and (7) title (caption), preamble, and emergency provision.  
Tex. Gov’t Code Ann. 
§ 311.023 (Vernon 1998); 
see also
 
Brown v. Owens
, 674 S.W.2d 748, 750 (Tex. 1984) (In determining the legislature’s intent, we must consider “the entire Act, its nature and object, and the consequences which follow from each construction.”).

We also determine legislative intent from the entire act and not just from isolated portions.  
State Dep’t of Highways & Pub. Transp. v. Gonzalez
, 82 S.W.3d 322, 327 (Tex. 2002).  Therefore, we will not give one provision a meaning out of harmony or inconsistent with other provisions even though it might be susceptible to such a construction if standing alone.  
Marcus Cable Assocs., L.P. v. Krohn
, 90 S.W.3d 697, 706 (Tex. 2002).  We must presume that the legislature chose its words carefully, recognizing that every word in a statute was included for some purpose and that every word excluded was omitted for a purpose. 
In re M.J.M.L.
, 31 S.W.3d 347, 354 (Tex. App.—San Antonio 2000, pet. denied); 
Renaissance Park v. Davila
, 27 S.W.3d 252, 257 (Tex. App.—Austin 2000, no pet.).  Likewise, we presume the legislature intended a just and reasonable result in enacting a statute.  
Tex. Gov’t Code Ann
. § 311.021(3) (Vernon 1998).  We will not construe a statute in a manner that will lead to a foolish or absurd result when another alternative is available.  
S.W. Bank v. Info. Support Concepts, Inc
., 85 S.W.3d 462, 464 (Tex. App.—Fort Worth 2002, pet. filed).

Roanoke contends that the second sentence of section 43.071(b) creates an exception to the rule created by the first sentence, by which the legislature implicitly recognized the consent provision of section 42.023, requiring a municipality to consent to reduction of its ETJ.  
Tex. Loc. Gov’t Code Ann.
 
 § 43.071(b) (stating that the restriction requiring a city to annex all or none of a Municipal Utility District (“MUD”) does not apply “if the district is wholly or partly in the ETJ of more than one municipality”).  Westlake argues that the first sentence of section 43.071(b) requires a municipality either to annex all of the water or sewer district or none of it to avoid a water or sewer district lying in multiple jurisdictions.
(footnote: 16)
 Westlake points to legislative history that reveals the purpose of section 43.071 is to prohibit annexation of only a part of a MUD; therefore, the statute generally requires that the entire district must be annexed.  
House Study Group, Bill Analysis
, Tex. H.B. 656, 65
th
 Leg., R.S. (1977).  As explained in the arguments for the bill, “A city should annex the whole district or leave it alone.  Districts shouldn’t be split.”  
Id.
  This is, as the bill analysis further explains, because MUDs are “governmental units” representing a community of interest and partial annexation would break up the unit; create confusion in operation, taxation, and utility rates; and offer opportunity for abuse as officials try to divide the district’s debts, set new rates, and work out contracts while the district operates at a political and legal disadvantage if its board is split by the annexation.  
Id
.

The House Bill Analysis also states, however, that “[d]istricts in two or more ETJs are not covered by the bill.”  
Id
.
  Roanoke argues that this statement means that the statute was not intended to apply to a MUD that lies in “overlapping” ETJs.  Thus, Roanoke contends that the general rule of section 42.023 requiring that a municipality obtain the consent of another municipality before reducing the other’s ETJ applies in the instant case.  
See
 
Tex. Loc. Gov’t Code Ann.
 § 42.023.

Westlake responds that this interpretation of section 43.071 is neither supported by the wording of the statute nor the rules of statutory construction.  Rather, Westlake argues that section 43.071 is self-contained, prescribing specific rules peculiar to annexation of MUDs.  Absent an explicit requirement for consent contained in that statute, Westlake contends it was not required to obtain Roanoke’s consent for the annexation of the 58.96 acre tract that was a part of MUD No. 3, even though a portion of the tract was within Roanoke’s ETJ.

Westlake notes that lack of a consent requirement is not unique to this statute.  As an example, Westlake cites
 Murphy
, in which the supreme court held that failure of the City of Parker to obtain the City of Murphy’s written consent prior to annexation of land within the City of Murphy’s ETJ did not render the annexation void.  932 S.W.2d at 482.  This was true, and distinguishable from the case at bar, because the issue was not raised within two years as required by section 43.901, which gave rise to a conclusive presumption that the City of Murphy had given its consent.  
Id
.  As discussed above, Westlake cannot rely on section 43.901’s conclusive presumption of consent to serve as a bar to Roanoke’s challenge to the validity of Ordinance No. 236.  
See
 
Tex. Loc. Gov’t Code Ann.
 § 43.901.

Westlake directs us to a footnote in 
Murphy
 in which the supreme court discussed the municipal annexation scheme and noted that “the [l]egislature has the power to entirely eliminate the requirement that a city give its written consent to a reduction of its ETJ.”  
Murphy
, 932 S.W.2d at 481 n.1.  We do not disagree that the legislature has the authority to so act; however, the issue before us is whether the legislature exercised this power and eliminated the consent requirement with respect to section 43.071.  
See
 
Tex. Loc. Gov’t Code Ann.
 § 43.071.

As an example of a statute eliminating consent, Westlake refers to section 43.072, which expressly allows a home-rule city to annex a MUD located entirely within the ETJ of a single general-law municipality, without consent of that municipality.  
Tex. Loc. Gov’t Code Ann.
 § 43.072.  Section 43.072(d) provides as follows:

Annexation of area under this section is exempt from the provisions of this chapter that prohibit:

. . . .

(3)       
reduction of the extraterritorial jurisdiction of a municipality without the
 
written consent of the municipality’s governing body.

Id
. § 43.072(d) (emphasis added).

We agree with Roanoke that a comparison of these two sections of the local government code supports Roanoke’s position rather than that of Westlake, by illustrating that, if the legislature had intended to eliminate the consent requirement in section 43.071, it could have done so expressly as it did in section 43.072.  
See
 
Tex. Loc. Gov’t Code Ann.
 §§ 43.071, 43.072.

Another example of express legislative intent to dispense with the consent requirement is found in the text of House Bill 584, introduced in the 78
th
 Legislature.  Tex. H.B. 584, 78
th
 Leg., R.S. (2003).  House Bill 584 relates to the transfer of ETJ between two general-law municipalities and unequivocally states in proposed section 42.027(f) of the local government code, “Section 42.023 does not apply to the reduction made under this section to the extraterritorial jurisdiction of the first municipality.”  
Id
.

Westlake also argues that public policy favors the exercise of jurisdiction by a single municipality (rather than by multiple municipalities) so that development of the MUD will not be subject to varying and inconsistent objectives by competing cities.  We do not disagree with this general statement; however, we disagree as to the manner by which Westlake seeks to resolve the claims associated with the attempted annexation of the 58.96 acre tract found in the overlapping ETJs of Roanoke and Westlake.

If we were to agree with Westlake’s interpretation of section 43.071, we would effectively have to write language into the statute to eliminate the consent requirement.  We are reluctant to do so because “[w]e are not permitted by statutory construction to add additional language to the statute unless it is necessary to give effect to clear legislative intent.”
  Sem v. State, 
821 S.W.2d 411, 416 (Tex. App.—Fort Worth 1991, no writ) (citing
 Hunter v. Fort Worth Capital Corp
., 620 S.W.2d 547, 552 (Tex. 1981)).  Because no truly extraordinary circumstances are present in this case showing an unmistakable legislative intent to divert us from enforcing the statute as written, we decline to judicially amend section 43.071 to dispense with the consent requirement.  
See Fitzgerald v. Advanced Spine Fixation Sys.
,
 Inc
., 996 S.W.2d 864, 867 (Tex. 1999).

We conclude that Westlake was required by section 42.023 to obtain Roanoke’s written consent for the annexation of the 58.96 acre tract pursuant to section 43.071; thus, as a matter of law, Ordinance No. 236 was void.  
See 
City of Houston v. Savely
, 708 S.W.2d 879, 887 (Tex. App.—Houston [1
st
 Dist.] 1986, writ ref’d n.r.e.) (“An ordinance that attempts to annex territory within the [ETJ] or municipal boundaries of another city is void.”), 
cert. denied
, 482 U.S. 928 (1987); 
see also McGregor
, 523 S.W.2d at 653-54
.  Accordingly, the trial court erred in granting Westlake’s first amended motion for summary judgment and erred in denying Roanoke’s first amended motion on this ground.  We sustain Roanoke’s fourth issue.

While Westlake states in its brief that Roanoke could have brought suit under section 42.901 to have the land in the overlapping ETJs of Roanoke and Westlake judicially apportioned, Westlake incorrectly expresses its view that Roanoke has not at any time sought relief under section 42.901.  Roanoke’s pleadings specifically requested judicial apportionment under 42.901 of the overlapping ETJs of Westlake and Roanoke.  Judicial apportionment under section 42.901 is the mechanism the legislature established in the event municipalities with overlapping ETJs as of August 23, 1963 are unable to reach an agreement among themselves as to how to apportion the overlapped area.  
See
 
Tex. Loc. Gov’t Code Ann.
 § 42.901.  This is the remedy available to the parties involved in this case.

VII.  CONCLUSION

Having overruled Roanoke’s first three issues and having sustained its fourth issue, we reverse that portion of the trial court’s judgment declaring Ordinance Nos. 236, 237, and 253 to be valid, and we render judgment that Ordinance Nos. 236, 237, and 253 are void.  We affirm the judgment in all other respects, and we remand the case for further proceedings in accordance with this opinion.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; DAY and GARDNER, JJ.

DELIVERED:  May 22, 2003

FOOTNOTES
1:
The governing body of a Type A municipality consists of a mayor and five aldermen
.  Tex. Loc. Gov’t Code Ann.
 § 22.031(b) (Vernon 1999).

2:
Under the local government code, the ETJ of a municipality is “the unincorporated area that is contiguous to the corporate boundaries of the municipality and that is located . . . within one-half mile of those boundaries, in the case of a municipality with fewer than 5,000 inhabitants”).  
Id.
 
§ 42.021(1); 
see also Maguire Oil Co. v. City of Houston
, 69 S.W.3d 350, 356 n.2 (Tex. App.—Texarkana 2002, pet. denied).

3:
Annexation of those tracts was upon application of the landowners.  
See
 
Tex. Loc. Gov’t Code Ann
. § 43.028(b) (Vernon 1999) (authorizing municipalities to annex sparsely occupied areas on petition of area landowners).

4:
On May 9, 1997, despite the election and the actions of Bradley, the disannexing Aldermen attempted to ratify their previous actions of May 2, 1997.  Also, on May 9 and again on May 12, 1997, the new Board of Aldermen of Westlake repudiated the actions of the disannexing Aldermen of May 2 and May 9, 1997.  On May 12, 1997, Bradley once again vetoed the actions purportedly taken by the disannexing Aldermen. 

5:
By its suit Roanoke also sought to have Ordinance Nos. 237 and 253, adopting the official map including that land within Westlake’s boundaries and redefining Westlake’s corporate limits, declared void. 

6:
On May 12, 1997, Westlake also filed a counterclaim repudiating the settlement agreement, characterizing it as an unauthorized sham and a fraud, as a part of a conspiracy among the disannexing Aldermen to dissolve the Town of Westlake, which included removing Bradley as mayor, in order to carry out their plan.  After the trial court vacated its judgment, Westlake took a non-suit as to that counterclaim. 

7:
We also clarify what is not in issue.  Roanoke has never pleaded nor pursued any relief based upon its attempted annexations in 1985 of the two tracts previously annexed by Westlake.  Additionally, Roanoke does not complain of the trial court’s rulings that the purported disannexations by Westlake of the tracts in May 1997 are void.

8:
We view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  All conflicts in the evidence are disregarded and any evidence favorable to the nonmovant is accepted as true.  
Rhone-Poulenc
, 997 S.W.2d at 223;
 Harwell v. State Farm Mut. Auto Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).  Evidence favoring the movant is not considered unless it is uncontroverted.  
Great Am.
, 391 S.W.2d at 47.

9:
Section 22.038(b) of the local government code requires that special meetings be called by the mayor:

(b)  
The mayor may call a special meeting
 on the mayor’s own motion or on the application of three aldermen.  Each member of the governing body, the secretary, and the municipal attorney must be notified of the special meeting.  The notice may be given personally or left at the person’s usual place of residence.

Tex. Loc. Gov’t Code Ann
. § 22.038(b) (Vernon 1999) (emphasis added). 

10:
See Village of Creedmoor v. Frost Nat’l Bank,
 808 S.W.2d 617, 618 (Tex. App.—Austin 1991, writ denied) (citing 
Beyer v. Templeton
, 147 Tex. 94, 101, 212 S.W.2d 134, 138 (1948) (stating rule that “whoever first commences legal proceedings asserting authority over the territory in question thereby acquires jurisdiction over same”)); 
see generally
, 22 
David B. Brooks, Texas Practice: Municipal Law and Practice
 § 1.13 (2d ed. 1999).

11:
Act of April 29, 1963, Municipal Annexation Act, 58
th
 Leg., R.S., ch. 160, 1963 Tex. Gen. Laws 447.

12:
The first in time rule remains viable in awarding exclusive jurisdiction over areas sought to be incorporated or annexed by a municipality.
  City of San Antonio v. City of Boerne
, 61 S.W.3d 571, 575 (Tex. App.—San Antonio 2001, pet. granted) (op. on reh’g);
 Village of Creedmore
, 808 S.W.2d at 618 (acknowledging that statutory framework for ETJ factors into the determination of jurisdiction rather than priority in time, alone).  The statutory provisions are silent, however, as to priority of jurisdiction in the event of overlapping ETJ’s.

13:
The statute in effect in 1985 likewise provided that “[t]he [ETJ] of a city shall not be reduced without the written consent of the governing body of such city . . . .”  Act of April 29, 1963, 
Municipal Annexation Act, 58
th
 Leg., R.S., ch. 160, § 3C., 1963 Tex. Gen. Laws 447
, 448-49 
repealed by
 Act of May 1,1987, 70
th
 Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 1306 (current version at 
Tex. Loc. Gov’t Code Ann.
 § 42.023).

14:
Act of June 21, 1949, 51
st
 Leg., R.S., ch. 508, §§ 1-2A, 1949 Tex. Gen. Laws 934-35 (emphasis added), 
repealed by
 Act of May 1, 1987, 70
th
 Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 1306 (amended 2001) (current version at 
Tex. Loc. Gov’t Code Ann
. § 43.901) (Vernon Supp. 2003).

15:
On the same date that Westlake passed Ordinance No. 236, it also passed Ordinance No. 237, adopting a metes and bounds official map of its boundaries to include the 58.96 acre tract, as well as two previously annexed tracts, within its corporate limits.  On May 6, 1996, Westlake passed Ordinance No. 253, redefining its boundaries to include the tracts.  Ordinance Nos. 237 and 253 purport to reflect the effect on Westlake’s boundaries of its annexation of the 58.96 acre tract.

16:
We note that at least 
one commentary on section 43.071 presents a similar argument to the one made by Roanoke:

A city is required to annex either all or none of a water district’s territory.  This restriction does not apply if more than half of the water district is located outside of the city’s extraterritorial jurisdiction, if the district is located within the extraterritorial jurisdiction of another city, or if the city perfects a strip annexation with district and property owner consent.

36A 
David B. Brooks, Texas Practice: County and Special District Law
 § 46.20 (2d ed. 2002) (citing 
Tex. Loc. Gov’t Code Ann.
 § 43.071).