# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00062-CV

**Heather Lockwood, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-FM-10-004136, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Heather Lockwood appeals a final order terminating her parental relationship with her son, J.A. On appeal, Lockwood alleges that (1) the evidence is legally and factually insufficient to support the trial court's findings that grounds exist to terminate the parent-child relationship and that termination of her parental rights is in the child's best interest, and (2) appointed trial counsel provided ineffective assistance because she was not present at trial. *See* Tex. Fam. Code Ann. § 161.001(1)(O), (2) (West Supp. 2011).[1] We will reverse and remand for further proceedings because the mediated settlement agreement admitted at trial is not binding and because Lockwood was deprived of effective assistance of counsel at trial. *See* Tex. Fam. Code Ann. § 153.0071(d) (West 2008) (prescribing requirements for binding mediated settlement agreement

---

[1] The statute governing involuntary termination of parental rights was amended effective September 1, 2011, but the amendments are not material to the issues in this case. We therefore cite to the current statute for convenience.

in suits relating to conservatorship, possession, and access to children); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003) (applying effective-assistance-of-counsel requirement in parental-termination cases); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (establishing effective-assistance-of-counsel standard of review); *United States v. Cronic*, 466 U.S. 648, 658-59 (1984) (holding that ineffective assistance of counsel is presumed to be harmful in some cases).

## FACTUAL AND PROCEDURAL BACKGROUND

The Texas Department of Family and Protective Services ("the Department") took custody of Lockwood's son, J.A., in July 2010, while he was residing with his biological father, Jesus Arguijo III. At the time, the Department was investigating allegations that both Arguijo and his wife (J.A.'s step-mother) had abused other children living with them, including one incident that J.A. may have witnessed. The Department was appointed J.A.'s temporary managing conservator, and the trial court periodically issued orders establishing requirements for Lockwood and Arguijo to regain custody.

In December 2011, the parties, their attorneys, J.A.'s court-appointed representatives, and J.A.'s paternal grandparents participated in a mediated settlement conference. *See* Tex. Fam. Code Ann. § 153.0071 (providing alternative dispute resolution procedures in child-custody cases). Lockwood herself was not present at the settlement conference, but apparently participated telephonically; all of the other participants appeared in person. The settlement conference culminated in a mediated settlement agreement ("MSA") in which J.A.'s father agreed to execute an irrevocable affidavit relinquishing his parental rights. The MSA also included a stipulation that clear and convincing evidence established that Lockwood failed to comply with the terms of the

2

service plan established by the Department and the trial court and that termination of her parental rights was in J.A.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(O) (providing grounds for terminating parental rights if court orders not followed), (2) (requiring that termination of parental rights be in child's best interest) (West Supp. 2011). Other provisions in the MSA waived the right to a jury trial and set the case for a final hearing the following day. The MSA was signed by Arguijo, the Department's representatives, J.A.'s representatives, Arguijo's attorney, and Lockwood's attorney. It is undisputed, however, that Lockwood did not personally sign the MSA. In fact, the signature line over Lockwood's name is blank, and neither her attorney nor anyone else purported to sign the agreement on Lockwood's behalf or with her permission.

In accordance with the MSA's terms, the case proceeded to a bench trial before an associate judge the next day. *See id.* § 201.015(a) (West 2008) (authorizing referral of proceedings to associate judge). Neither Lockwood nor her attorney was present at the final hearing, and no person purporting to represent Lockwood entered an appearance. Although the trial judge was advised that Lockwood's attorney was not present, the trial proceeded. The MSA and Arguijo's affidavit of relinquishment were admitted into evidence without objection. The court took judicial notice of its file, specifically the court's prior orders. In addition, the Department called two witnesses—the case supervisor and J.A.'s guardian ad litem—to establish both that Lockwood failed to comply with the provisions of the court's orders establishing the actions necessary for her to regain custody and that termination of her parental rights was in J.A.'s best interest. At the conclusion of the trial, the judge stated on the record, "Then I will adopt basically what was agreed

3

to in the mediated settlement agreement and name the [D]epartment non-parent sole managing conservator of [J.A.]."

The final judgment, which was signed by the referring judge the same day as the trial, includes findings and conclusions that (1) there is clear and convincing evidence to terminate Lockwood's parental rights under section 161.001(1)(O), (2) of the family code, and (2) the MSA is irrevocable. The MSA's terms are expressly incorporated into the final judgment, which Lockwood's attorney signed "approved as to form."

On appeal, Lockwood asserts that (1) the MSA is unenforceable and revocable because she did not sign it and therefore it is no evidence supporting the trial court's findings, (2) the additional evidence offered at trial is legally and factually insufficient to support termination of her parental rights, and (3) she was deprived of the effective assistance of counsel because she was unrepresented at the final hearing.

## DISCUSSION

The Department's case at trial relied in large part on stipulations in the MSA that there were grounds to terminate Lockwood's relationship with J.A. and that termination of her parental rights was in J.A.'s best interest. *See id.* § 161.001(1)(O), (2). At the conclusion of the trial, the judge indicated that the MSA was a significant, if not determinative, factor in the decision to terminate Lockwood's parental rights. On appeal, Lockwood principally contends that the trial court erred in terminating her parental rights based on the stipulations in the MSA because the absence of her signature constitutes a material deviation from the statutory requirements for mediated settlement agreements in suits affecting the parent-child relationship. *See id.* § 153.0071(d)(2). She further

4

asserts that the additional evidence offered at trial was insufficient to support termination of her parental rights, and even if it was sufficient, the outcome of the trial was tainted by her attorney's failure to appear and subject the Department's case to meaningful adversarial testing. The attorney ad litem representing J.A. concurs with Lockwood. The Department contends, however, that the MSA was enforceable at trial notwithstanding the absence of Lockwood's signature because there is a rebuttable presumption that an attorney retained for litigation has actual authority to enter into a settlement on behalf of a client. *See e.g., Kettrick v. Coles*, No. 01-10-00855-CV, 2011 WL 3820941, at *8 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, no pet.) (mem. op.); *City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 629 (Tex. App.—Fort Worth 2003, pet. denied); *Ebner v. First State Bank*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied). The Department further asserts that Lockwood's attorney's representation as a whole was effective regardless of whether the attorney appeared at the final hearing.

We hold that (1) the MSA does not comply with section 153.0071(d) of the Texas Family Code, which prescribes the requirements for binding and irrevocable mediated settlement agreements in suits affecting the parent-child relationship, and (2) the Department's reliance on the MSA and the absence of Lockwood's counsel at trial so skewed the presentation of the merits of the case that we should remand the cause to the trial court in the interest of justice without regard to whether the additional evidence admitted at trial would otherwise be legally and factually sufficient to support the trial court's judgment.

*Mediated Settlement Agreement*

Texas has a policy of encouraging "the peaceable resolution of disputes," particularly in disputes involving the parent-child relationship. Tex. Civ. Prac. & Rem. Code Ann. § 154.002 (West 2011); *Brooks v. Brooks*, 257 S.W.3d 418, 421 (Tex. App.—Fort Worth 2008, pet. denied). In furtherance of that policy, Texas Family Code section 153.0071 permits a trial court to refer a suit affecting the parent-child relationship ("SAPCR") to mediation and provides that a mediated settlement agreement "is binding on the parties" if the agreement

> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>
> (2) is signed by each party to the agreement; and
>
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

Tex. Fam. Code Ann. § 153.0071(d).

Outside the SAPCR context, settlement agreements arising from mediation are usually not binding when one party timely withdraws his or her consent to the agreement, unless the other party successfully sues to enforce the settlement agreement as a contract that complies with Rule 11 of the Texas Rules of Civil Procedure. *See id.* § 153.0071(e); *Milner v. Milner*, 361 S.W.3d 615, 618 n.2 (Tex. 2012); *Padilla v. LaFrance*, 907 S.W.2d 454, 461-62 (Tex.1995); *Boyd v. Boyd*, 67 S.W.3d 398, 402 (Tex. App.—Fort Worth 2002, no pet.). Section 153.0071(d), however, expressly makes mediated settlement agreements binding and irrevocable in suits affecting the parent-child relationship (subject to limitations not alleged to be applicable in this case) and

6

creates a procedural shortcut for the enforcement of such agreements. *See* Tex. Fam. Code Ann. § 153.0071(d) (setting forth requirements for binding mediation agreement), (e) (making such agreements binding without regard to Rule 11 or other rules of law), (e-1) (giving trial court discretion not to enforce mediated settlement agreement in certain cases involving family violence or if agreement is not in child's best interest); *cf. Milner*, 361 S.W.3d at 618 & n.2 (applying section 6.602 of family code, which is worded identically to section 153.0071(d)); *Boyd*, 67 S.W.3d at 402 (same); *Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (same).

In this case, it is undisputed that Lockwood was not physically present at the settlement conference and did not sign the settlement agreement. Despite this obvious deviation from section 153.0071(d)'s express requirements, the Department contends that we must apply a rebuttable presumption that Lockwood's attorney had authority to settle the case on the terms stated in the MSA based on the attorney's representation of Lockwood, presence at the settlement conference, and signature on both the MSA and the final judgment. Such a presumption has been applied to settlement agreements in general, and the Department contends that Lockwood failed to produce any evidence in her motion for new trial rebutting the presumption. *See, e.g.*, *Kettrick*, 2011 WL 3810941, at *8 (rebuttable presumption that attorney retained for litigation has actual authority to enter into settlement on behalf of client); *City of Roanoke*, 111 S.W.3d at 629 (same); *Ebner*, 27 S.W.3d at 300 (same). Lockwood contends, however, that the application of such a presumption to mediated settlement agreements in suits affecting the parent-child relationship is inconsonant with the plain language in section 153.0071(d). We agree with Lockwood.

7

Applying the presumption the Department cites would contravene section 153.0071(d)'s requirement that *both* the parties *and* their attorneys (if any) sign the agreement. In addition, allowing an attorney's signature to substitute for a party's signature would render section 153.0071(d)'s disclaimer requirement effectively meaningless because there would be no assurance that the notice regarding irrevocability was actually conveyed to the client with the statutorily mandated prominence. It would be absurd to construe section 153.0071(d) in a manner that effectively renders two of three express requirements superfluous. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (legislative intent is found in plain meaning of text unless different meaning is apparent or literal application would lead to absurd results); *see also Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 551 (Tex. 1981) (observing that, in enacting legislation, the legislature is never presumed to do useless or meaningless act).

The absence of Lockwood's signature on the MSA not only creates doubt about whether she consented to the agreement, it also creates doubt as to whether she was adequately apprised of its essential terms, including the statutorily mandated disclaimer. Section 153.0071(d)(1) requires that a disclaimer regarding irrevocability be "in a prominently displayed statement that is in boldfaced type or capital letters or underlined." Tex. Fam. Code Ann. § 153.0071(d)(1). This requirement is for the protection and benefit of the parties, and there would be no point to mandating such a disclaimer if it were unnecessary for the parties to actually see it. Considering the plain language in section 153.0071 and the importance of the rights and interests at issue in SAPCR proceedings, we agree with our sister courts that strict compliance with section 153.0071(d)'s requirements is essential to forming a binding and irrevocable mediated settlement agreement in such

cases. *See Streety v. Hue Thi*, No. 05-09-00556-CV, 2010 WL 2278617, at *4 (Tex. App.—Dallas June 8, 2010, no pet.) (mem. op.) (strict compliance with disclaimer requirement in section 153.0071(d) is essential for binding and irrevocable mediated settlement agreement); *Spinks v. Spinks*, 939 S.W.2d 229, 230 n.2 (Tex. App.—Houston [1st Dist.] 1997, no writ) (same). In this case, it is undisputed that Lockwood did not sign the MSA; thus, the statute's requirements were not satisfied, there was no evidence at the time of trial that she consented to the terms of the agreement, and the MSA is no evidence to support the trial court's termination order.

### *Ineffective Assistance of Counsel*

In Texas, indigent parents in termination proceedings have a statutory right to counsel. Tex. Fam. Code Ann. § 107.013(a)(1) (West Supp. 2011); *In re M.S.*, 115 S.W.3d at 544. Because it would be a useless gesture to recognize the importance of counsel in termination proceedings by statute but not to require that counsel perform effectively, this statutory right embodies the right to effective assistance of counsel. *In re M.S.*, 115 S.W.3d at 544. To determine whether parents in termination proceedings received effective assistance of counsel, Texas courts apply the two-pronged standard established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re M.S.*, 115 S.W.3d at 544-45. To satisfy the *Strickland* standard, Lockwood must show both (1) that her attorney's performance was so deficient and contained such serious errors that the attorney was not functioning as counsel, and (2) that the deficient performance prejudiced her defense to such a degree that she was deprived of a fair trial. *Strickland*, 466 U.S. at 687.

9

In determining whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case and focus on whether counsel performed in a reasonably effective manner. *In re. M.S.*, 115 S.W.3d at 545. The Texas Supreme Court has stated that "[c]ounsel's performance falls below acceptable levels of performance when the 'representation is so grossly deficient as to render proceedings fundamentally unfair.'" *Id.* (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). In considering the acceptability of counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and it is only when counsel's conduct is "'so outrageous that no competent attorney would have engaged in it,' that the challenged conduct will constitute ineffective assistance." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), and *Strickland*, 466 U.S. at 689). An assertion of ineffective assistance will be sustained only if the record affirmatively supports such a claim. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to counsel's subjective motivations, courts will ordinarily presume that the challenged action might be considered sound trial strategy. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). An error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Ex parte Ewing*, 570 S.W.2d 941, 943 (Tex. Crim. App. 1978); *Hollis v. State*, 219 S.W.3d 446, 470-71 (Tex. App.—Austin 2007, no pet.).

To show prejudice, Lockwood "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "[a] reasonable probability is a probability sufficient to

undermine confidence in the outcome," *id.*, and a presumption of prejudice may be warranted if an indigent parent is denied counsel at a "critical stage" of litigation. *See Cronic*, 466 U.S. at 659; *see also In re V.V.*, 349 S.W.3d 548, 560 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (noting that cases governed by *Cronic* are on one end of *Strickland* continuum). In such circumstances, "[n]o specific showing of prejudice [is] required," because "the adversary process itself [is] presumptively unreliable." *Cronic*, 466 U.S. at 659; *see also Smith v. Robbins*, 528 U.S. 259, 286 (2000) (distinguishing denial of counsel altogether on appeal, warranting presumption of prejudice, from mere ineffective assistance of counsel on appeal, which does not warrant such presumption); *Penson v. Ohio*, 488 U.S. 75, 88-89 (1988) (complete denial of counsel on appeal requires presumption of prejudice); *Burdine v. Johnson*, 262 F.3d 336, 345 (5th Cir. 2001) (en banc) (noting that prejudice is presumed when, during "critical stage of a trial," counsel is either (1) totally absent or (2) present but prevented from providing effective assistance).

In this case, the record reflects that Lockwood's attorney did not appear at trial. Thus, Lockwood, who also did not appear at trial, was not represented at trial by her appointed counsel or anyone else. The MSA, which did not comply with the statute, was incorporated into an order without objection. Lockwood also points out that there are variances between the testimony regarding her noncompliance with the court's orders and the actual content of the orders that should have been subjected to adversarial testing, but were not. There is no plausible strategic reason for trial counsel's failure to appear at a critical stage of litigation and subject the Department's case to appropriate adversarial testing. Applying the principles in *Strickland* and *Cronic* to this case, we

11

conclude that the adversarial process employed here was so unreliable that a presumption of prejudice is warranted.

Even if the *Cronic* presumption did not apply, Lockwood's failure to receive any representation at the termination hearing undermines our confidence in the outcome. Likewise, the Department had no notice that Lockwood was contesting her consent to the MSA when it proceeded with an accelerated trial schedule and presented its case. Consequently, the presentation of the merits of this case was improperly skewed. The State, the child, and the parents share an interest in an accurate and just decision. *See In re M.S.*, 115 S.W.3d at 547-48; *In re B.L.D.*, 113 S.W.3d 340, 353 (Tex. 2003). Accordingly, we will reverse the trial court's judgment and, in the interests of justice, remand this cause for further proceedings without considering whether the additional evidence that was offered at trial would otherwise be sufficient to support termination of the parent-child relationship. *See* Tex. R. App. 43.3(b); *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 176 (Tex. App.—Dallas 2009, no pet.) ("Appellate courts have broad discretion to remand a case for a new trial in the interest of justice. . . . Remand is appropriate when, for any reason, a case has not been fully developed."); *Ahmed v. Ahmed*, 261 S.W.3d 190, 195-96 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Remand is appropriate if a case needs further development because it was tried on an incorrect legal theory or to establish and present evidence regarding an alternate legal theory." (citations omitted)).

## CONCLUSION

For the foregoing reasons, we reverse the trial court's order terminating Lockwood's parental rights to J.A. and remand the cause to the trial court for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Remanded

Filed:   June 26, 2012