ACCEPTED
05-18-01328-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
1/21/2019 3:11 PM
LISA MATZ
CLERK

FILED IN
5th Court of Appeals
FILED: 01/23/2019
14:23:11
Lisa Matz, Clerk

**No. 05-18-01328-CV**

In the Court of Appeals
Fifth District of Texas
at Dallas, Texas

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
1/22/2019 12:00:00 AM
LISA MATZ
Clerk

---

**In the Interest of J.S., Jr., et al, Children**

---

On appeal from the 304th Judicial District Court
of Dallas County, Texas
the Honorable Andrea Martin, Judge Presiding
Cause No. 13-877-W

---

**Brief of Appellant Father**

---

*Counsel of record:*

April E. Smith
State Bar No. 18532800
P.O. Box 870550
Mesquite, Texas 75187-0550
972-613-5751
972-686-4714 (Fax)

april@aesmithlaw.com

## Identity of Parties and Counsel

**Presiding Judge:**                Andrea Martin


**Parties to the Appeal:**

K.R., Mother

J.S., Father

J.S., Jr. and S.S., Children

The Texas Department of Family and Protective Services


**Trial Counsel:**

Yewande Adelumo, State Bar No. 24097276
Assistant District Attorney
2600 Lone Star Drive, LB 22
Dallas, TX  75212
(Counsel for the Department, Petitioner)


Robert James Herrera, State Bar No. 09530300
P.O. Box 600230
Dallas, TX  75360-0230
(Counsel for Father)


Irene Mugambi, State Bar No. 00796019
2720 Stemmons Frwy., Suite 711, South Tower
Dallas, TX  75207-2203
(Counsel for Mother)

Delia Gonzales, State Bar No. 24034461
2213 Boll St.
Dallas, TX 75204-2613
(Guardian/Attorney ad Litem for the Children)[1]


**Appellate Counsel:**

April E. Smith, State Bar No. 18532800
P.O. Box 870550
Mesquite, Texas 75187-0550
(Counsel for Father)


John Creuzot, Dallas County District Attorney
State Bar No. 05069200
Appellate Division
133 N. Riverfront Blvd., LB 19
Dallas, TX 75207-4399
(Counsel for the Department, appellee)

---

[1]Gonzales is now an Associate Judge for the Dallas County Family Courts. Further, the trial court appointed CASA as the children's representative after the hearing. (CR: 1096). Thus, the children are not currently represented by counsel.

# Table of Contents

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Issue One

The trial court abused its discretion by entering judgment on the Rule 11 Agreement because there was no evidence that Father's counsel had authority to enter into the agreement.

## Issue Two

The evidence is legally insufficient to support the termination of Father's parental rights pursuant to TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

## Issue Three

The evidence is factually insufficient to support the termination of Father's parental rights pursuant to TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

## Issue Four

The evidence is legally insufficient to support the best interest finding.

## Issue Five

The evidence is factually insufficient to support the best interest finding.

## Issue Six

Father received ineffective assistance of counsel.

**<u>Issue Seven</u>**

The evidence is legally and factually insufficient to support the appointment of CPS as the managing conservator.

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Issue One, Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Issue Two, Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Issue Three, Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Issue Four, Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Issue Five, Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Issue Six, Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Issue Seven, Restated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    Exhibit One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Decree of Termination

    Exhibit Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Rule 11 Agreement

    Exhibit Three . . . . . . . . . . . . . . . . Letter from Father to Appellate Counsel

# Index of Authorities

CASES                                                                                          PAGE

*Behzadpour v. Bonton,*
    No. 14-09-01014-CV, 2011 Tex. App. LEXIS 565,
    2011 WL 304079, at *3 (Tex. App. – Houston [14th Dist.]
    Jan. 27, 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Butnaru v. Ford Motor Co.,*
    84 S.W.3d 198 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Roanoke v. Town of Westlake,*
    111 S.W.3d 617 (Tex. App. – Fort Worth 2003, pet. denied) . . . . . . . 13-15

*Ebner v. First State Bank of Smithville,*
    27 S.W.3d 287 (Tex. App. – Austin 2000, pet. denied) . . . . . . . . . . . . . . 14

*Foreca, S.A. v. GRD Dev. Co.,*
    758 S.W.2d 744 (Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Garcia v. State,*
    57 S.W.3d 436 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Holley v. Adams*,
    544 S.W.2d 367 (Tex. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*In re C.H.*,
    89 S.W.3d 17 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 24, 25

*In re H.R.M.*,
    209 S.W.3d 106 (Tex. 2006) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . 27

*In re J.A.J.,*
    243 S.W.3d 611 (Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*In re J.F.C.*,
96 S.W.3d 256 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-21

*In re J.O.A.,*
283 S.W.3d 336 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re J.R.W.,*
No. 14-12-00850-CV, 2013 Tex. App. LEXIS 1396,
2013 WL 507325, at *12 (Tex. App. – Houston [14th Dist.]
Feb. 12, 2013, pet. denied) (mem. op.) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re J.T.G.*,
121 S.W.3d 117 (Tex. App. – Fort Worth 2003, no pet.) . . . . . . . . . . . . . 25

*In re J.W.*,
152 S.W.3d 200 (Tex. App. – Dallas 2004, pet. denied) . . . . . . . . 24, 25, 27

*In re N.K.*,
99 S.W.3d 295 (Tex. App. – Texarkana 2003, no pet.) . . . . . . . . . . . . . . 25

*In re S.N.,*
287 S.W.3d 183 (Tex. App. – Houston [14th Dist.] 2009, no pet.) . . . . . . . 18

*In the Interest of M.S.,*
115 S.W.3d 534 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*In the Interest of S.J.T.B.,*
No. 09-12-00098-CV, 2012 Tex. App. LEXIS 9445, 2012 WL 5519208,
at *11 (Tex. App. – Beaumont Nov. 15, 2012, no pet.) (mem. op.) . . . . . . 28

*Padilla v. LaFrance,*
907 S.W.2d 454 (Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Santosky v. Kramer,*
455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) . . . . . . . . . . . . . 18

*Spring Garden 79U, Inc. v. Stewart Title Co.,*
> 874 S.W.2d 945 (Tex. App. – Houston [1st Dist.] 1994, no writ) . . . . . . . 15

*Strickland v. Washington,*
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . . . . . . . . . . 28

*SW Bell Tel. Co. v. Vidrine,*
> 610 S.W.2d 803 (Tex. Civ. App. – Houston [1st Dist.]
> 1980, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*W. Beach Marina, Ltd. v. Erdeljac,*
> 94 S.W.3d 248 (Tex. App. – Austin 2002, no pet.) . . . . . . . . . . . . . . . . . 14

## STATUTES

TEX. FAM. CODE ANN. § 101.007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TEX. FAM. CODE ANN. § 107.013(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

TEX. FAM. CODE ANN. § 153.131(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

TEX. FAM. CODE ANN. § 161.001(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

TEX. FAM. CODE ANN. § 161.001(b)(1)(Q) . . . . . . . . . . . . . . . . . 11, 21-23, 29, 30

TEX. FAM. CODE ANN. § 161.001(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 24

TEX. FAM. CODE ANN. § 161.207(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

## RULES

TEX. R. CIV. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**To the Honorable Court of Appeals:**

Comes now, J.S., appellant, and respectfully submits this brief urging error from a judgment terminating his parental rights.

## Statement of the Case

The Texas Department of Family and Protective Services (the "Department" or "CPS") filed a motion to modify in a suit affecting the parent-child relationship. (CR: 455). Throughout the case, Father was incarcerated in Federal prison. (CR: 911-912; RR-1: 25-26). The children were returned to Mother's care pursuant to the monitored return provisions. (CR: 862-864). The return failed and the Department filed a motion to modify temporary orders. (CR: 865-878). Father wrote to the court and was appointed counsel. (CR: 919-922). Counsel filed pleadings on Father's behalf. (CR: 924-930; 996-1002; 1003-1004). A Rule 11 Agreement was signed by Father's counsel on Father's behalf. (CR: 1092-1095). Pursuant to the Rule 11 Agreement, a placement hearing was held and placement with Luz Reyes was denied by the court. (CR: 1108-1115; RR-1: 167-169). Pursuant to the Rule 11 Agreement, the court terminated Father's parental rights pursuant to Section 161.001(b)(1)(Q) and best interest. (CR: 1093; RR-1: 168). Notice of Appeal was timely filed. (CR: 1124).

1

## Issues Presented
### Issue One
The trial court abused its discretion by entering judgment on the Rule 11 Agreement because there was no evidence that Father's counsel had authority to enter into the agreement.

### Issue Two
The evidence is legally insufficient to support the termination of Father's parental rights pursuant to TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

### Issue Three
The evidence is factually insufficient to support the termination of Father's parental rights pursuant to TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

### Issue Four
The evidence is legally insufficient to support the best interest finding.

### Issue Five
The evidence is factually insufficient to support the best interest finding.

### Issue Six
Father received ineffective assistance of counsel.

### Issue Seven
The evidence is legally and factually insufficient to support the appointment of CPS as the managing conservator.

## Statement of the Facts

A hearing was held regarding placement of the children with L.R., a paternal aunt. (RR-1: 8-9). The CPS worker, Kenecia Cook, testified that the children were removed from the managing conservator, E.L., after she tested positive for

2

methamphetamine and reports of domestic violence. (RR-1: 9, 27). Father was incarcerated at the time. (RR-1: 10). Mother was granted a monitored return but it was unsuccessful and the children were returned to foster care. (RR-1: 10). Cook testified as to the elements of the Rule 11 Agreement: a home study on L.R.; if denied, a placement hearing; if the children were placed with L.R., she would be the managing conservator and the parents would be possessory conservators (after Father is adjudicated); if the children were not placed with L.R., the parents' rights would be terminated on "O" grounds for Mother and "Q" grounds for Father and best interest of the children. (RR-1: 10-14). Cook testified that the agreement was in the children's best interest. (RR-1: 13-14).

Father was not responsible for any of the removal facts. (RR-1: 14). Father communicated with Cook and indicated he would like L.R. to be considered for placement of the children. (RR-1: 15). Father had been incarcerated on a federal drug-related charge since 2016. (RR-1: 25-26).

Cook testified that the home study on L.R. was denied due to her criminal history (on federal parole for drug distribution), financial issues and not being forthcoming with information (denied emotional or physical abuse and denied having played a role in the drug case). (RR-1: 18-19, 24). L.R. has been separated from her abusive husband for 14 years. (RR-1: 20). L.R.'s 14-year-old daughter, D.R., lives

3

with her. (RR-1: 21). L.R. has no CPS history and is drug-tested monthly. (RR-1: 21). L.R. is employed full-time. (RR-1: 21-22). L.R. was convicted for selling drugs, not using them. (RR-1: 24). The fact that L.R. and Father were convicted for the same type of offense and remain in close contact is concerning to the Department. (RR-1: 26).

Cook testified the children had no bond with Father. (RR-1: 28). Cook said the children did not know L.R. despite them having contact when they lived with E.L. (RR-1: 30-31). L.R. also knows maternal grandmother about whom there are concerns of drug usage. (RR-1: 31).[2] It was also concerning that L.R. had a relationship with E.L. who also used drugs. (RR-1: 32). If the children were placed with L.R., they would be moved from a foster home in which they have been for almost two years. (RR-1: 34). Cook did not support placement with L.R. (RR-1: 34). L.R. had not seen the children since 2016 when they lived with E.L.; L.R. requested visitation but was denied by the Department. (RR-1: 35, 40-41).

The Department was also concerned with L.R.'s mental health due to her being diagnosed with anxiety, depression and insomnia. (RR-1: 35). L.R. takes medication for her issues. (RR-1: 35, 42). One of the children, S.S., has some learning difficulties that require someone to work with her. (RR-1: 35-36). During the home

---

[2]L.R. is married to maternal grandmother's brother. (RR-1: 31).

study, L.R. was remodeling the home and there were exposed wires, an exposed water heater and the bathroom sink was not working properly. (RR-1: 36). The Department was also concerned with L.R.'s ability to financially care for the children as there was only about $300 extra per month. (RR-1: 37). The Department did not believe that L.R. would be protective of the children upon Father's release from prison. (RR-1: 36-37). The initial criminal check on L.R. indicated "no hit"; however, L.R. self-reported her federal parole status. (RR-1: 39-40). Had she not done so, the Department would not have known about it. (RR-1: 40). L.R.'s hair strand drug test was negative. (RR-1: 40).

L.R. testified that she was Father's aunt. (RR-1: 49). She has worked for the same company for two years. (RR-1: 50). She would be able to add the children to her health insurance without any extra expense. (RR-1: 50). She has resided in her home for 18-years. (RR-1: 50). She replaced the flooring in her home that was damaged by a water leak. (RR-1: 51). A hole in the roof and a hole in the sheetrock was repaired. (RR-1: 51). She bought bunk beds for the children. (RR-1: 51). The laundry room and living room ceiling were also repaired. (RR-1: 51). The front door was repainted and the faucets were replaced. (RR-1: 52). The bathroom and kitchen have been child-proofed. (RR-1: 52-53). She provided receipts and photographs of the home repairs. (RR-1: 54; Exhibit 3). She was incarcerated for 37 months

5

beginning in 2013 and is on federal probation. (RR-1: 55-56). She is considered low risk and reports online monthly. (RR-1: 56). She is fulfilling the terms of her probation. (RR-1: 56).

While she was incarcerated, she obtained her GED, took parenting classes, an agricultural class via SMU, she participated in 18 months of trauma classes and she completed drug education classes. (RR-1: 56-57). She presented copies of certificates of her accomplishments (Exhibit 1). (RR-1: 58-59). She will complete probation on December 4, 2019. (RR-1: 60). She has a boyfriend who is attending UNT. (RR-1: 61). She was in an abusive relationship 20-years ago. (RR-1: 62). She takes medication for anxiety and anti-depressants. (RR-1: 62). She provided a letter from her physician (Exhibit 5). (RR-1: 64-65). She provided copies of pay stubs (Exhibit 6). (RR-1: 65-67). She knows S.S. takes medication for ADHD and wets the bed; she wants to continue the children in therapy. (RR-1: 67-68). She wants the children to attend a new school that is one-half mile from her home. (RR-1: 68). She was denied the opportunity to visit the children [by CPS]. (RR-1: 70). She has sufficient family support and wants the children placed in her care. (RR-1: 72). She did not learn of the children being in care until E.L. had them. (RR-1: 73). She only recently learned they had been returned to foster care. (RR-1: 73). She was unaware

6

of her boyfriend's drug case and such would concern her. (RR-1: 78-79). He does not come to her house as it is not wheelchair accessible. (RR-1: 79).

With regard to her drug conviction, she said that she drove to Laredo with her cousin, whom she knew was involved in drug trafficking, but who assured her there were no drugs in the car. (RR-1: 80-82). L.R. no longer associates with those family members because they are incarcerated. (RR-1: 83). She speaks to Father about three times per month and provides him with money for commissary. (RR-1: 84, 88). Father's drug history concerns her. (RR-1: 96). She has three adult children; two are attending college with one of them having a full academic scholarship. (RR-1: 98, 99). Any involvement with drugs is in her past and she is a different person now. (RR-1: 101). Losing three years of her children's lives made a huge difference in her life. (RR-1: 101). Father is in the wrong and she sees a problem with it. (RR-1: 101). If necessary, she will cease all contact with Father. (RR-1: 102). She will be protective of the children. (RR-1: 102). She understands this case is about the children and making sure they are protected. (RR-1: 104).

D.S., L.R.'s 14-year-old daughter, testified that she wanted the children to live with her and her mom. (RR-1: 107). She wants what is best for them. (RR-1: 107). Her mother takes good care of her and she feels safe in her home. (RR-1: 108). She attends school at a leadership academy in Grand Prairie. (RR-1: 108).

V.M., L.R.'s 21-year-old son, testified that he was a political science major at the University of North Texas (UNT) and hoped to graduate in Spring 2019. (RR-1: 111). His Mother provided him with love and support and is the reason he is graduating from UNT. (RR-1: 111). He will help his mom with the children and would be a role model to them. (RR-1: 112). L.R. would provide a safe and loving home for the children. (RR-1: 112-113). L.R. is financially able to care for the children. (RR-1: 113).

A.A., L.R.'s boyfriend, testified that he was 39-years-old. (RR-1: 116). He is attending college studying criminal justice and plans to attend law school. (RR-1: 117). He was arrested in 2001 when he was 17-years-old on a drug possession charge. (RR-1: 117-118). He was placed on deferred probation. (RR-1: 118). He no longer speaks to the person with whom he was arrested on the drug case. (RR-1: 126). L.R. was unaware of his drug case. (RR-1: 120).

L.R. would be a positive influence on the children. (RR-1: 119). L.R. is a very responsible parent who works hard and takes care of her children. (RR-1: 120). L.R. is capable of taking on these children and meeting their emotional and physical needs. (RR-1: 121). She is financially able to care for the children. (RR-1: 121).

R.B. has known L.R. since 2006 when he began driving her children to church. (RR-1: 127-128). L.R. attends church weekly and she is very involved with her

8

children. (RR-1: 128). She would be a good role model for children. (RR-1: 128-129). He provides financial assistance to L.R. periodically such as paying her daughter's orthodontia bill of $100 per month and her cell phone bill. (RR-1: 133, 134-135). L.R. would be a good placement for the children and it would be in their best interest. (RR-1: 136).

Rasheda Warren, the children's counselor, testified that they were doing well in the foster home and at school. (RR-1: 138-139). S.S. suffered from severe anxiety but is doing better now. (RR-1: 141-142). The children need structure. (RR-1: 147). Another removal from their current placement would be difficult for them. (RR-1: 148). The children are well-adjusted in their current placement. (RR-1: 148). Removal would result in continuous or acute trauma which would require additional trauma therapy, play therapy and a behavioral specialist and psychiatrist for medication management. (RR-1: 149-150). It is in their best interest to remain in the foster home. (RR-1: 150). She cannot say whether placement with family would be good because she does not know them. (RR-1: 152). She would continue working with the children if placed with L.R. (RR-1: 152). It would have helped her to have observed a visit between children and L.R. (RR-1: 154). Visits with Mother would help in the children's recovery. (RR-1: 157). The children need consistency and stability which Mother has not provided. (RR-1: 159). The children have not

9

mentioned any other family to her. (RR-1: 159-160). She did not believe the family had been there for these children. (RR-1: 161, 163). It surprised her that there had been three home studies of family members in this case. (RR-1: 164).

Rule 11 Agreement

Father's counsel signed a Rule 11 Agreement on his behalf. (CR: 1092-1095). Father did not personally sign the Rule 11 Agreement. (CR: 1094). In fact, Father was not present at the time the Rule 11 was agreed to as he was incarcerated in the federal penitentiary in Florence, Colorado. (CR: 916). The CPS supervisor signed the Rule 11 Agreement on August 3, 2018 (a Friday). (CR: 1094). The hearing was held the following Monday, August 6, 2018 - a mere three days later. (RR-1: 3). Further, trial counsel never indicated that the Rule 11 Agreement had been agreed to by Father. (RR-1: 7-169).

Father wrote to appellate counsel insisting that trial counsel did not have authority to enter into the Rule 11 Agreement. (Exhibit Three). In his letters to the trial court, Father was consistent in his desire that his parental rights not be terminated. (CR: 988-989; 1102-1103; 1134-1136; 1194-1196; 1204-1205). Trial counsel was without authority to sign the Rule 11 Agreement on Father's behalf. Thus, the trial court erred in entering judgment pursuant to the Rule 11 Agreement.

## Summary of the Argument

The trial court improperly rendered judgment on the Rule 11 Agreement which was not signed by Father. There is no evidence that Father was aware of the agreement or that he consented to it a mere three days before the placement hearing. Father indicated to appellate counsel that trial counsel had no authority to enter into any type of agreement which terminated his parental rights. Thus, the trial court abused its discretion in terminating Father's parental rights pursuant to the invalid Rule 11 agreement.

The evidence is legally and factually insufficient to prove that Father would be incarcerated and unable to care for the children for two years from the filing of the petition. Therefore, the evidence is insufficient to support the finding terminating Father's parental rights pursuant to Section 161.001(b)(1)(Q).

The evidence is legally and factually insufficient to prove termination is in the children's best interest. No evidence was presented regarding the *Holley* factors. Therefore, the evidence is insufficient to support the finding that termination was in the children's best interest.

Father was deprived of effective assistance of counsel. The record reflects that counsel agreed to termination of Father's parental rights pursuant to Section 161.001(b)(1)(Q). The record fails to prove that Father would be incarcerated and

11

unable to care for the children as required by Section 161.001(b)(1)(Q). Further, counsel did not have authority to enter into the Rule 11 agreement (as argued in Issue One). Thus, counsel did not have a firm command of the facts of this case and Father received ineffective representation in this case.

Further, the trial court abused its discretion by appointing CPS as managing conservator. The evidence was insufficient to prove the grounds for termination and that it was in the children's best interest. The evidence proved that the L.R. was an appropriate family placement. Keeping children with family is paramount. Therefore, termination was not supported by the evidence presented. Thus, the preponderance of the evidence proved that L.R. should have been named the managing conservator of the children.

## Issue One, Restated

The trial court abused its discretion by entering judgment on the Rule 11 Agreement because there was no evidence that Father's counsel had authority to enter into the agreement.

## Arguments and Authorities

Standard of Review

A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner without reference to guiding rules or principles. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex. 2002).

Relevant Authorities

Rule 11 of the Rules of Civil Procedure provides, "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. Although a court may not render an agreed judgment absent consent of the parties at the time the judgment is rendered, the court may nevertheless enforce a settlement agreement that complies with Rule 11 as a contract. *City of Roanoke v. Town of Westlake,* 111 S.W.3d 617, 629 (Tex. App. – Fort Worth 2003, pet. denied). Courts construe Rule 11 settlement agreements just as they would any contract. *See Padilla v. LaFrance,* 907 S.W.2d 454, 460 (Tex. 1995). The intent of the parties to be bound

13

is an essential element of an enforceable contract. *See Foreca, S.A. v. GRD Dev. Co.,* 758 S.W.2d 744, 746 (Tex. 1988).

Generally, a court indulges every reasonable presumption to support a settlement agreement made by a duly employed attorney. *Ebner v. First State Bank of Smithville,* 27 S.W.3d 287, 300 (Tex. App. – Austin 2000, pet. denied). However, this presumption may be rebutted by "affirmative proof that the client did not authorize his attorney to enter into the settlement." *City of Roanoke,* 111 S.W.3d at 629. When evidence demonstrates that the attorney did not have the authority to enter into the settlement agreement, the agreement will not be enforced. *Ebner,* 27 S.W.3d at 300. "Mere employment of counsel does not clothe the counsel with authority to settle the cause without specific consent of the client." *SW Bell Tel. Co. v. Vidrine,* 610 S.W.2d 803, 805 (Tex. Civ. App. – Houston [1st Dist.] 1980, writ ref'd n.r.e.).

A party may clothe his attorney with either actual or apparent authority to reach and sign a binding settlement agreement. *W. Beach Marina, Ltd. v. Erdeljac,* 94 S.W.3d 248, 255 (Tex. App. – Austin 2002, no pet.). To establish authority, the principal must make some manifestation to the agent (actual authority) or to a third party (apparent authority) that he is conferring such authority." *Ebner,* 27 S.W.3d at 300. Actual authority is authority that the principal intentionally conferred on the agent or allowed the agent to believe was conferred. *City of Roanoke,* 111 S.W.3d

14

at 627. Actual authority is created through written or spoken words or conduct of the principal communicated to the agent. *Behzadpour v. Bonton,* No. 14-09-01014-CV, 2011 Tex. App. LEXIS 565, 2011 WL 304079, at *3 (Tex. App. – Houston [14th Dist.] Jan. 27, 2011, no pet.). Actual authority includes both express and implied authority and "usually denotes that authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe that he possesses, or (3) allows the agent to believe that he possesses by want of due care." *Spring Garden 79U, Inc. v. Stewart Title Co.,* 874 S.W.2d 945, 948 (Tex. App. – Houston [1st Dist.] 1994, no writ). Implied actual authority is an "adjunct" to express actual authority, "because implied authority is that which is proper, usual, and necessary to the exercise of the authority that the principal expressly delegates." *Id*.

A party may revoke its consent to a settlement agreement at any time before judgment is rendered on the agreement. *S. & A. Rest. Corp. v. Leal,* 892 S.W.2d 855, 857 n. 1 (Tex. 1995). A judgment rendered after one of the parties revokes his consent is void. *Id*.

Application to the Instant Case

Father was not present at the placement hearing. (RR-1: 2). The CPS caseworker, Kenecia Cook, testified to the terms of the Rule 11 Agreement. (RR-1: 10-14). Cook testified that Father had been writing letters to her wherein he named

15

the relatives that he wished to be considered for placement of his children, one of whom was L.R. (RR-1: 14-15). Father's wishes for his children to be placed with family members is clear; however, it is equally clear that he did not want his parental rights terminated. (CR: 988-989; 1102-1103; 1134-1136; 1194-1196; 1204-1205). Further, the agreement was signed on Friday, August 3, 2018 with trial scheduled to commence on Monday, August 6, 2018. (CR: 937, 1094). No evidence was presented that Father consented to the terms of the Rule 11 agreement. (RR-1: 7-169). Thus, counsel was without authority to enter into a Rule 11 agreement without Father's consent to terminate his parental rights.

Father wrote a letter to the trial court dated September 3, 2018, wherein he indicated that he "was only informed just yesterday that my parental rights were terminated." (CR: 1102). Father continues, "I should have been notified imediately [sic] that my right's [sic] were terminated, and I was not, I don't think that is right. Also, I feel I should have been present in the court hearing's [sic] even if it is through the telephone." (CR: 1102). The letter was received and filed on September 12, 2018. (CR: 1102). The final order was signed on September 18, 2018. (RR-1: 35, 1113).

Father wished to be present at said hearing. (CR: 1102). Due to Father not being present, he was unable to inform the trial court that he had not agreed to the

16

terms of the Rule 11 agreement. Nor was he able to inform the court that counsel did not have authority to enter the agreement on his behalf. Counsel's failure to insure Father's presence at the hearing resulted in Father being unable to voice his "rejection" of the Rule 11 agreement. At the time the trial court signed the order, she was on notice that Father did not agree to the termination of his parental rights. The trial court was also aware that counsel was without authority - either actual or implied - to enter into a Rule 11 agreement on Father's behalf. Father did not wish to be bound by the terms of the agreement which is an essential element of an enforceable contract. Thus, the trial court abused its discretion in entering a final order based on a void or unenforceable Rule 11 agreement.

**Issue Two, Restated**

The evidence is legally insufficient to support the termination of Father's parental rights pursuant to TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

**Issue Three, Restated**

The evidence is legally insufficient to support the termination of Father's parental rights pursuant to TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

**Arguments and Authorities**

Because these two issues involve the same evidence, or lack thereof, Appellant will present argument together so as not to be repetitive.

Standard of Review

Termination of parental rights is a matter that implicates fundamental constitutional rights. *Santosky v. Kramer,* 455 U.S. 745, 758-759, 102 S. Ct. 1388, 1397, 71 L. Ed. 2d 599 (1982); *In re S.N.,* 287 S.W.3d 183, 186 (Tex. App. – Houston [14ᵗʰ Dist.] 2009, no pet.). To terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has committed one of the acts prohibited under section 161.001(b)(1) of the Texas Family Code and that termination of parental rights is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1); TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). Clear and convincing evidence is "proof that will produce in the

mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

Legal Sufficiency

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. This means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *In re J.F.C.,* 96 S.W.3d at 266.

If, after conducting its legal sufficiency review, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient. *Id*.

Factual Sufficiency

The higher burden of proof in termination proceedings elevates the appellate standard of factual sufficiency review. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). A

19

finding that must be based on clear and convincing evidence cannot be viewed the same as one that may be sustained on a mere preponderance of the evidence. *C.H.*, 89 S.W.3d at 25. When considering whether the evidence rises to the level of clear and convincing, courts of appeals must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the allegation was proven. *C.H.*, 89 S.W.3d at 25. The inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provisions of section 161.001(b)(1) and that termination of the parent-child relationship would be in the child's best interest. *C.H.*, 89 S.W.3d at 28.

The distinction between legal and factual sufficiency lies in how courts review the evidence. *In re J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review, in determining whether the evidence is such that a finder of fact could reasonably form a firm belief or conviction that its finding was true, courts of appeals must consider whether disputed evidence is such that a reasonable finder of fact could not have resolved it in favor of the finding. *J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable finder of fact could not have credited in favor of the finding is so significant that a finder of fact could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *J.F.C.*, 96 S.W.3d at 266. If a court of appeals reverses on factual sufficiency grounds, then

20

the court must detail in its opinion why it has concluded a reasonable finder of fact could not have credited disputed evidence in favor of its finding. *Id.* at 266-267.

Other Relevant Authorities

TEX. FAM. CODE ANN. § 161.001 provides, in pertinent part:

> (b) The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
> (1) that the parent has:
> (Q) knowingly engaged in criminal conduct that has resulted in the parent's:
> (I) conviction of an offense; and
> (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.

TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

Application to the Instant Case

The motion to modify was filed on November 7, 2016. (CR: 455). At the time of the placement hearing (August 6, 2018), Mother had been granted a monitored return of the children which had failed. (CR: 862-864, 865; RR-3). A motion to modify was filed on March 27, 2018. (CR: 865). At the placement hearing on August 6, 2018, Cook testified that Father was in federal prison and had been so incarcerated "since 2016, the duration of the case". (RR-1: 3, 10, 25-26). No evidence was presented as to Father's release date from federal prison. (RR-1: 7-

21

169). Thus, there is no evidence proving Father's inability to care for the child "for not less than two years from the date of filing the petition" (*e.g.,* November 7, 2018).

Conclusion

Based on the particular facts of this case, the State failed to present sufficient evidence to prove grounds for termination. No evidence was presented that Father would be incarcerated on November 7, 2018 - two years from the filing of the petition as required by Section 161.001(b)(1)(Q). Further, as argued in Issue One, there is no evidence that Father agreed to the termination of his parental rights because he did not personally sign the Rule 11 agreement and counsel had no authority to do so on Father's behalf.

When all of the evidence is viewed in the light most favorable to the finding that Father's parental rights should be terminated pursuant to "Q" grounds, a reasonable trier of fact could not have formed a firm belief or conviction that the finding was true. Termination on "Q" grounds requires a specific finding that Father's confinement rendered him unable to care for the children "for not less than two years from the date of filing the petition". No such evidence was presented. Thus, the evidence is legally insufficient to support termination of Father's parental rights on "Q" grounds.

Further, a finder of fact could not have reasonably formed a firm conviction or belief that Father violated the relevant conduct provisions of section 161.001(b)(1)(Q). Thus, the evidence is factually insufficient to support termination of Father's parental rights on "Q" grounds. Because the evidence is legally and factually insufficient, the case should be reversed and remanded for a new trial.

### Issue Four, Restated
The evidence is legally insufficient to support the best interest finding.

### Issue Five, Restated
The evidence is factually insufficient to support the best interest finding.

### Arguments and Authorities

Because these two issues involve the same evidence, or lack thereof, Appellant will present argument together so as not to be repetitive.

Standard of Review

The Standards of Review previously cited in Issues Two and Three are incorporated herein by reference to avoid undue repetition.

Best Interest Finding

Before terminating a parent's rights, the fact finder must find, in addition to one of the statutory grounds, that terminating the parent's rights is also in the child's

23

best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). In making that determination, these factors should be considered:

1.  the desires of the child;

2.  the present and future physical and emotional needs of the child;

3.  the present and future emotional and physical danger to the child;

4.  the parental abilities of the person seeking custody;

5.  programs available to assist those persons in promoting the best interest of the child;

6.  plans for the child by those individuals or by the agency seeking custody;

7.  the stability of the home or proposed placement;

8.  the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate; and

9.  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371-372 (Tex. 1976); *In re J.W.*, 152 S.W.3d 200, 207 (Tex. App. – Dallas 2004, pet. denied). These factors are not exhaustive, and, in some cases, some factors may be inapplicable. *C.H.*, 89 S.W.3d at 27. Courts may consider other factors not on the list. *C.H.*, 89 S.W.3d at 27. Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that

termination is in the best interest of the child. *C.H.*, 89 S.W.3d at 27. Conversely, the presence of scant evidence relevant to each factor will not support such a finding. *C.H.*, 89 S.W.3d at 27.

Courts strongly presume that the biological parents' keeping a child is in the child's best interest. *In re J.W.*, 152 S.W.3d at 207. The controlling question is whether the relationship between the parent and child should be terminated. *In re J.T.G.*, 121 S.W.3d 117, 129 (Tex. App. – Fort Worth 2003, no pet.). The trier of fact is not required to find the parent is unfit in order to find that termination is in the best interest of the child. *J.T.G.*, 121 S.W.3d at 129. The need for permanence is the paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App. – Texarkana 2003, no pet.). The goal of establishing a stable, permanent home for a child is a compelling governmental interest. *N.K.*, 99 S.W.3d at 301 n.9.

Application to the Instant Case

The desires of the children were not mentioned. (RR-1: 7-169). The children's physical and emotional needs were not mentioned other than the need for continued counseling and consistency and stability. (RR-1: 7-169, 153, 159). The physical and emotional danger to the children was not mentioned other than the counselor's belief that moving the children would be harmful. (RR-1: 7-169, 150). There was no

25

mention of the programs available to assist in promoting the children's best interest. (RR-1: 7-169). There was no evidence presented regarding the parental abilities of the foster parent. (RR-1: 7-169). There was substantial evidence presented regarding L.R.'s parental abilities. (RR-1: 49-137). The Department's plans for the children were adoption by the current foster placement. (RR-1: 13). No evidence regarding the stability of the foster home was presented other than the counselor's testimony that the children were well-adjusted. (RR-1: 7-169, 139, 148). L.R.'s home was stable (she had lived there 18 years) and she could provide for the children emotionally and financially. (RR-1: 50, 94). Two of her three oldest children were attending college. (RR-1: 98, 111). No evidence was presented regarding any acts (other than his incarceration) to show Father's existing parent-child relationship was inappropriate. (RR-1: 7-169). No evidence was presented showing any excuse for Father's actions or omissions because the Father's actions did not result in the children's removal. (RR-1: 7-169;14).

The caseworker testified that it was in the children's best interest for the Father's parental rights to be terminated and that the Rule 11 Agreement was in the children's best interest. (RR-1: 12-14). R.B. testified that placement with L.R. was in the children's best interest. (RR-1: 136). The counselor testified that it was not in the children's best interest to move them from the foster home. (RR-1: 148, 150).

26

Conclusion

CPS failed to present evidence sufficient to overcome the presumption that children should be with their biological family. *See In re J.W.,* 15 S.W.3d at 207. Very little evidence was presented regarding the *Holley* factors. Based on the evidence presented, a reasonable trier of fact could not have formed a firm belief or conviction that its finding was true. Nor could a factfinder reasonably have formed a firm belief or conviction that termination of Father's parental rights was in the children's best interest. Thus, the evidence was insufficient to support the finding that termination was in the children's best interest-especially with the availability of a viable placement option with family. *See In re H.R.M.*, 209 S.W.3d 106, 108 (Tex. 2006) (per curiam). Thus, the case should be reversed and remanded for a new trial.

**Issue Six, Restated**
Father received ineffective assistance of counsel.

**Arguments and Authorities**

Standard of Review

The statutory right to counsel for an indigent parent in a termination proceeding "embodies the right to effective counsel." *In the Interest of M.S.,* 115 S.W.3d 534, 544 (Tex. 2003); *see also* TEX. FAM. CODE ANN. § 107.013(a). To

prevail on a claim of ineffective assistance of counsel, the appealing party must show that counsel's performance was deficient and that counsel's errors were so serious as to deprive the parent of a fair trial with a reliable result. *See M.S.,* 115 S.W.3d at 545 (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To determine whether counsel performed in a reasonably effective manner, the appellate court must take into account all of the circumstances surrounding the case, and "must give great deference to counsel's performance, indulging 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *See Id*. (quoting *Strickland,* 466 U.S. at 689). The appellate court cannot speculate about counsel's rationale from a silent record. *In the Interest of S.J.T.B.,* No. 09-12-00098-CV, 2012 Tex. App. LEXIS 9445, 2012 WL 5519208, at *11 (Tex. App. – Beaumont Nov. 15, 2012, no pet.) (mem. op.) (not designated for publication). To determine prejudice, the appellate court considers whether "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *M.S.,* 115 S.W.3d at 550 (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) and *Strickland,* 466 U.S. at 687).

<u>Application to the Instant Case</u>

As previously argued in Issues Two and Three, the evidence was insufficient to support the trial court's finding terminating Father's parental rights pursuant to Section 161.001(b)(1)(Q). However, trial counsel signed a Rule 11 Agreement which provided, in pertinent part (in paragraph 5):

> If the child is not placed with [L.R.] pursuant to any terms of this Agreement, CPS shall request the termination of the parental rights . . . on [sic] the father based on Section 161.001(b)(1)(Q) of the Texas Family Code and best interest and no other grounds, and the parents agree to the termination of their parental rights pursuant to this Section.

(CR: 1093). No evidence was presented regarding Father's release date. (RR-1: 7-169). As argued in Issues Two and Three, the evidence was insufficient to prove Father's rights should be terminated pursuant to Section 161.001(b)(1)(Q). Furthermore, as argued in Issue One, trial counsel was without authority to sign the Rule 11 agreement nor did Father consent to the termination of his parental rights.

However, trial counsel signed the agreement that Father's rights should be terminated pursuant to § 161.001(b)(1)(Q). (CR: 1094-1095). Thus, counsel agreed to termination without a full understanding of the evidence, or lack thereof, or a full understanding of the evidence required to terminate parental rights pursuant to

29

Section 161.001(b)(1)(Q) in the case. In addition, counsel signed the agreement without Father's consent or authority.

Conclusion

Father has shown that counsel's performance was deficient and that counsel's errors were so serious as to deprive him of a fair trial with a reliable result. Further, Father has shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Therefore, he is entitled to a new trial.

**Issue Seven, Restated**

The evidence is legally and factually insufficient to support the appointment of CPS as the managing conservator.

**Arguments and Authorities**

Standard of Review

In contrast to termination findings, conservatorship determinations are governed by a preponderance of the evidence standard. *In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007). The appointment of a conservator is subject to review for abuse of discretion and may be reversed only if the decision is arbitrary and unreasonable. *Id*. (citing *Gillespie v. Gillespie,* 644 S.W.2d 449, 451(Tex. 1982)).

In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's conservatorship finding under section 153.131(a) to obtain reversal of the conservatorship appointment. *See In re J.A.J.,* 243 S.W.3d at 616-617. If challenges to the termination findings are upheld on appeal, the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination pursuant to Family Code section 161.207." *In re J.R.W.,* No. 14-12-00850-CV, 2013 Tex. App. LEXIS 1396, 2013 WL 507325, at *12 (Tex. App. – Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.).

Statutory Provisions

The Family Code creates a presumption that a parent will be named managing conservator, unless the court finds that such appointment would not be in the child's best interest "because the appointment would significantly impair the child's physical health or emotional development" or finds that there is a history of family violence involving the parents. TEX. FAM. CODE ANN. § 153.131(a).

Section 161.207 provides: "if the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Protective and Regulatory Services, a

licensed child-placing agency, or an authorized agency as a managing conservator of the child." TEX. FAM. CODE ANN. § 161.207(a).

Application to the Instant Case

Upon termination of the parents' parental rights, the Department was appointed managing conservator of the children. (CR: 1111).

As previously argued in Issues Two through Five, the evidence was insufficient to support the finding that Father committed the conduct in "Q" grounds or that termination of his parental rights was in the children's best interest. Father's aunt, L.R. was a suitable placement for the children. Since the home study had been completed, L.R. had made repairs to her home and had sufficient income to support the children. (CR: 1050-1077, 1085-1090). If finances were tight, she had other family who would support and assist her in caring for the children. (RR-1: 65-66, 71-72, 112, 119, 121, 129, 132-135, Exhibit 6). L.R. told the Department of her federal conviction otherwise, the Department would not have known about it. (RR-1: 39-40). L.R. was on probation for the charge but was doing well and there were no violations or problems since her release onto probation. (RR-1: 55-56). She is considered a low risk on probation and only reports online once per month. (RR-1: 56). L.R. presented evidence of courses taken in prison to better herself. (CR: 1077-1084). The Department did not remove L.R.'s daughter from her care for the reasons it denied

this home study.  (CR: 1030-1031; RR-1: 65-66).  Thus, appointment of L.R. as managing conservator would not significantly impair the children's physical health or emotional development.  Hence, the trial court abused its discretion by appointing CPS as the managing conservator.  The case should be reversed and remanded for appointment of L.R. as managing conservator or for further proceedings.

## **Prayer**

WHEREFORE, PREMISES CONSIDERED, Appellant prays that this court will find: (1) the trial court abused its discretion in accepting the Rule 11 Agreement because counsel was without authority to sign the agreement on Father's behalf, (2) the evidence is insufficient to support the grounds for termination and best interest, (3) Father received ineffective assistance of counsel, and (4) that the trial court erred in appointing the Department the managing conservator. Appellant further prays that the that the case will be reversed and remanded for a new trial.

Respectfully submitted,

/s/ *April E. Smith*
April E. Smith
State Bar No. 18532800
P.O. Box 870550
Mesquite, Texas   75187-0550
972-613-5751
972-686-4714 (Fax)
april@aesmithlaw.com

## Certificate of Service

I hereby certify that a copy of this brief was e-served via efile.txcourts.gov on Laura Ann Coats, Assistant District Attorney, at laura.coats@dallascounty.org on January 21, 2019.

/s/ *April E. Smith*
April E. Smith

## Certificate of Compliance

Relying on the word count of the word processing program, I certify that this document contains 6,934 words excluding those exempted by rule 9.4(i)(1).

/s/ *April E. Smith*
April E. Smith

## Appendix

Exhibit One . . . . . . . . . . . . . . . . . . . . . . . . . . . Decree of Termination (Redacted)

Exhibit Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . Rule 11 Agreement (Redacted)

Exhibit Three . . . . . . . . . . . . . Letter from Father to Appellate Counsel (Redacted)

| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| , ET AL., | § | 304TH JUDICIAL DISTRICT |
| | § | |
| CHILDREN | § | DALLAS COUNTY, TEXAS |

## DECREE OF TERMINATION

On the 6th day of August, 2018, this matter came on to be heard at final trial on the merits.

*Appearances*

Petitioner, the Dallas County Children's Protective Services Unit of the Department of Family and Protective Services, appeared by its representative, Kenecia Cook, and through its attorney, Kimberly L. Austin, Assistant District Attorney, and announced ready.

The Respondent Mother,                          ., having been duly and properly served with citation and having entered into a Rule 11 Agreement, appeared in person and with her attorney, Irene Mugambi, and announced ready.

The Respondent Father,                          having been duly and properly served with citation and having entered into a Rule 11 Agreement, appeared by and through his attorney, Robert Herrera, and announced ready.

Delia Gonzales, appointed by the Court as Guardian and Attorney Ad-litem of the children the subject of this suit, appeared and announced ready.

The Court Appointed Special Advocate (C. A. S. A.), appointed by the Court to represent the best interest of the children the subject of this suit appeared in person.

## Jurisdiction

The Court, having examined the pleadings and heard the evidence and argument of counsel, finds that it has jurisdiction of this cause and of all the parties and that no other Court has continuing exclusive jurisdiction of this cause.

## Jury

A jury was waived, and all matters in controversy, including questions of fact and law, were submitted to the Court. All persons entitled to citation were properly cited.

## Children

The Court finds that the following children are the subject of this suit:

NAME:
SEX:
DATE OF BIRTH:


NAME:
SEX:
DATE OF BIRTH:

## Rule 11 Agreement

The Court finds that the parties have entered into a Rule 11 Agreement, which is attached hereto as Exhibit "A" and adopted as the Order of this Court. The parties agreed to the following terms:

1.      The parental rights of the Respondent Mother,                          as to both children, shall be terminated pursuant to Section 161.001(b)(1)(O) of the Texas Family Code; and, the parental rights of the Respondent Father,                          as to both children, shall be terminated pursuant to Section 161.001(b)(1)(Q) of the Texas Family Code; and, It is the understanding of all parties that TDFPS will be named as Permanent Managing Conservator with the right to consent to the children's adoption.

2.      It is the intention of the parties that the Department shall, barring unforeseen circumstances, consent to the adoption of the children by the current foster parents and shall request that any adoptive family maintain an email account for the purposes of receiving communications from the parents; furthermore, it is agreed that the foster parents will correspond with the parents at least quarterly with photos and written updates, provided that the parents utilize the account at least once per year.

## *TERMINATION OF* _____ *PARENTAL RIGHTS*

The Court finds by clear and convincing evidence that                    the mother of the children the subject of this suit, failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Texas Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to Section 161.001(1)(O) of the Texas Family Code, which is grounds for termination of her parental rights.

The Court finds by clear and convincing evidence that termination of the parent-child relationship between .                            , the mother, and the children the subject of this suit,          . and                              , is in the best interest of the children.

**IT IS, THEREFORE, ORDERED AND DECREED** by the Court that the parent-child relationship between                              the mother, and the children,

,       and                      ., **BE AND ARE HEREBY TERMINATED.**

ITIO
CAUSE NO. JC-13-877-W
DECREE OF TERMINATION                                        Page 3 of 7

## *TERMINATION OF* _____ *PARENTAL RIGHTS*

The Court finds by clear and convincing evidence that                    , the

father of the children the subject of this suit,                    . and

knowingly engaged in criminal conduct that resulted in the father's conviction of an offense and

confinement or imprisonment and inability to care for the children for not less than two years from

the date of filing the petition, pursuant to Section 161.001(B)(1)(Q) of the Texas Family Code,

which is grounds for termination of his parental rights.

The Court finds by clear and convincing evidence that termination of the parent-child

relationship between                    , the father, and the children the subject of this suit,

. and                    is in the best interest of the children.

**IT IS, THEREFORE, ORDERED AND DECREED** by the Court that the parent-child

relationship between                    , the father, and the children,

.. and                    , **BE AND ARE HEREBY TERMINATED.**

## *APPOINTMENT OF A PERMANENT MANAGING CONSERVATOR*

The Court finds by clear and convincing evidence that the appointment of the DIRECTOR

OF THE DALLAS COUNTY CHILD PROTECTIVE SERVICES UNIT OF THE TEXAS

DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES as permanent managing

conservator would be in the best interest of the children,                    , and

**IT IS, THEREFORE, ORDERED** that the DIRECTOR OF THE DALLAS COUNTY

CHILD PROTECTIVE SERVICES UNIT OF THE TEXAS DEPARTMENT OF FAMILY AND

PROTECTIVE SERVICES is appointed Permanent Managing Conservator of the subject

children,                    . and                    with the rights and duties specified

in Chapter 153, subchapter G, of the Texas Family Code, this does include the right to consent to adoption.

## *INFORMATION PURSUANT TO TEXAS FAMILY CODE § 105.006*

Court:                           304th DISTRICT COURT DALLAS County, Texas
Cause Number:              JC-13-00877-W-304TH

**MANAGING CONSERVATOR:**
THE TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES

**MOTHER'S INFORMATION:**
Name:                                                            DOB
Residence Address:

**FATHER'S INFORMATION:**
Name:                                                            DOB
Residence Address:

## *DISMISSAL OF OTHER COURT-ORDERED RELATIONSHIPS*

IT IS ORDERED that all prior existing court-ordered relationships or conservatorships with the children the subject of this suit are hereby DISSOLVED AND DISMISSED upon entry of this Final Termination Order.

IT IS ORDERED that all court-ordered relationships between the respondent parents and their court-appointed attorneys in this suit are hereby DISSOLVED AND DISMISSED upon entry of this Final Order.

## *CLARIFYING ORDERS*

Without affecting the finality of this Order, this Court expressly reserves the right to make orders necessary to clarify and enforce this Order.

## DENIAL OF OTHER RELIEF

IT IS ORDERED that all relief requested in this case by any person who has been a party to this suit at any time, which is not expressly granted, is denied.

## RIGHT TO APPEAL

A PARTY AFFECTED BY THIS ORDER HAS THE RIGHT TO APPEAL. AN APPEAL IN A SUIT IN WHICH TERMINATION OF THE PARENT-CHILD RELATIONSHIP IS SOUGHT IS GOVERNED BY THE PROCEDURES FOR ACCELERATED APPEALS IN CIVIL CASES UNDER THE TEXAS RULES OF APPELLATE PROCEDURE. FAILURE TO FOLLOW THE TEXAS RULES OF APPELLATE PROCEDURE FOR ACCELERATED APPEALS MAY RESULT IN THE DISMISSAL OF THE APPEAL.

## Date of Judgment

This Final Decree of Termination was judicially PRONOUNCED AND RENDERED in open Court at Dallas, Dallas County, Texas, on the 6th Day of August, and further noted on the Court's docket on the same day, but signed this _____ day of September, 2018.

HONORABLE JUDGE ANDREA MARTIN
304TH DISTRICT COURT

APPROVED AS TO FORM:

Kimberly L. Austin
Assistant District Attorney

Delia Gonzales
Guardian Ad Litem for the Children

Irene Mugambi
Attorney for Respondent Mother

Robert Herrera
Attorney for Respondent Father

APPROVED AS TO FORM:

_____        _____
Kimberly L. Austin                       Delia Gonzales
Assistant District Attorney              Guardian Ad Litem for the Children


_____        _____
Irene Mugambi                            Robert Herrera
Attorney for Respondent Mother           Attorney for Respondent Father



NO. JC-13-00877-W

IN THE INTEREST OF

§
§
§
§
A CHILD §
§

IN THE DISTRICT COURT

304TH JUDICIAL COURT

DALLAS COUNTY, TEXAS

## BINDING RULE 11 AGREEMENT

COMES NOW, the Texas Department of Family and Protective Services as represented by its duly authorized agents, Natosha Hooks and Kenecia Cook, and through their attorney, Sandra Jackson, Assistant District Attorney; the Attorney/Guardian ad Litem, Delia Gonzalesr, representing the interests of the subject children; and Respondent Mother, _____ , by and through her attorney, Irene Mugambi; and Respondent Father, _____ , by and through his attorney, Robert Herrera, enter into this Rule 11 agreement regarding the above referenced cause.

The children the subject of this Agreement is identified below, to wit:

Name:
Sex:
Date of Birth:

Name:
Sex:
Date of Birth:

We, the undersigned parties, as evidenced by our signatures below, agree to compromise and settle the claims and controversies between us, including all claims of termination of parental rights, conservatorship, child support, and possession and access disputes regarding the above identified children. We wish to avoid potentially protracted and costly litigation and its inherent risks, and agree and stipulate that we have carefully considered the needs of the child; our respective abilities to support and care for the child, and the best interests of the child. We stipulate that the agreements set forth hereafter are in the child's best interest and that the matter is hereby resolved. In order to reach this settlement, all claims were considered, directly or indirectly, including all pending motions.

The parties agree as follows:

1. The Court has Ordered CPS to conduct a home study of _____
   ι. If the home study is approved by CPS and the Attorney/Guardian

*Rule 11 Agreement – ꭍ*

Ad Litem, the children shall be placed with _____ and CPS shall be appointed as Managing Conservator if _____ desires to participate in the Fostering Connections Program, or _____ shall be appointed as Managing Conservator if she does not want to participate in the Fostering Connections Program. If CPS is appointed as Managing Conservator, it shall request transfer of Managing Conservatorship to _____ upon her completion of the Program or sooner if she decides not to complete the Program, is ineligible to complete the Program or does not complete the requirements necessary to be referred for a licensing home study within 90 days of the Final Hearing in this cause. .

2. If CPS and/or the Attorney/Guardian Ad Litem do not approve the home studies for _____, there shall be a placement hearing. If the court places the children with _____, conservatorship shall be as set forth in Section 1 of this Agreement, *but there shall be NO PARTICIPATION IN the Fostering CONNECTIONS Program,*

3. If the child is placed with _____ pursuant to any terms of this *and CPS* Agreement, the parent-child relationship between _____ and *will be* the children shall be established and he and the mother, *dismissed* _____ shall be appointed as Joint Possessory Conservators with visitation *As a party.* as arranged and agreed with the Managing Conservator and supervised by the Managing Conservator or her competent adult designee.

4. If the child is not placed _____ pursuant to any terms of this Agreement, CPS shall request the termination of the parental rights of the mother based on Section 161.001(b)(1)(O) of the Texas Family Code and best interest and no other grounds, and on the father based on Section 161.001(b)(1)(Q) of the Texas Family Code and best interest and no other grounds, and the parents agree to the termination of their parental rights pursuant to this Section.

5. If parental rights are terminated pursuant to this Agreement, CPS shall be appointed as Managing Conservator and shall, barring unforeseen circumstances, consent to the adoption of the child by the current foster parents and shall request that any adoptive family maintain an email account for purposes of receiving communications from the parents and correspond with the parents at least quarterly with photos and written updates provided that the parents utilize the account at least once per year.

6. All parties agree to the filing of any pleadings, including any Motion to Modify which is necessary, and requests for any trial amendments necessary to effectuate the terms of this Agreement, and to waive the issuance and return of citation of the same.

*Rule 11 Agreement -*

7.     This Rule 11 agreement may be modified or rescinded if all parties to the agreement agree in writing to modify or rescind this agreement.

We agree to and understand the provisions of this agreement regarding the children. We each enter into this agreement freely and voluntarily, without duress, with the advice and consent of our respective counsel and not under the influence of any intoxicating or illegal substances. We have not been forced to settle in this matter by anyone.

This agreement is made and performable in Dallas County, Texas, and must be construed in accordance with Texas law. If any disputes arise with regard to the interpretation or performance of this agreement or any of its provisions, including the necessity and form of final orders, we agree to try to resolve the dispute by conference. Any disputes regarding drafting shall be resolved whenever possible by reference to the Texas Family Law Practice Manual.

We agree to appear in Court at the first available date, or, following notice of such a prove-up hearing, by our signature below waive appearance, to present evidence consistent with this agreement to secure rendition of judgment in accordance with the terms herein contained.

**THE PARTIES HERETO AGREE THAT THIS AGREEMENT IS BINDING ON THE PARTIES AND IS NOT SUBJECT TO REVOCATION. THIS AGREEMENT MEETS THE REQUIREMENTS OF SECTION 153.0071(d) OF THE TEXAS FAMILY CODE. A PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT ON THIS SETTLEMENT AGREEMENT.**

**AGREED AS TO FORM AND SUBSTANCE:**

_____ , Mother

_____ , Father

_____ 9a _____
CPS Caseworker

_____ 8/3/18
CPS Supervisor

_____
Dallas CASA

_____
Delia Gonzales, Attorney/Guardian Ad Litem

_____        _____

*Rule 11 Agreement –*

**AGREED AS TO FORM ONLY:**

_____
Robert Herrera
Attorney for Father

_____
Irene Mugambi
Attorney for Mother

_____
Sandra Jackson
Assistant District Attorney

_Rule 11 Agreement_

Dear April Smith,                                    12-27-18

     Hi, my name is _____ , you are
representing me in the appeal case involving my
children, _____

if you can use this in the courts, but the lawyer i dont know
Robert Herrera who was representing me before signed my
name on a Rule 11 binding agreement, and in one of
the paragraphs, it says that if my _____ wasn't
able to get my kid's, that the request would be made
for the termination of my rights, and that I would
agree to the termination of my rights.
     I know this isn't right, I would never agree to
something like that, and this lawyer Robert Herrera
forged my name on this Rule 11 without me knowing
about it or going over it. I know you can use this
somehow, someway. Ms. Smith please help me get my
parental rights and kid's back. Thank you

Federal Correctional Institution
P.O. Box 6000
Florence, Colorado 81226

DENVER CO 802

28 DEC 2018 PM 5 L

75187-055050

April E. Smith-Attorey At law
P.O. Box 870550
Mesquite, Texas 75187-0550

